### B. F. HAMMOND ET AL. V. B. H. HOUGH ET AL.

1. ADMISSION OF IMMATERIAL TESTIMONY WILL NOT BE REVISED.—The admission of a power of attorney not authenticated will not be revised when there was in evidence another power of attorney authorizing the act, the identity of the constituent in the second power with the party making the deed being established. An agent will not destroy his authority by reciting another document as his authority.

2. RIGHTS TO TRANSCRIPT USED BY OTHER PARTY.—A party having read from a transcript of proceedings had in an estate, the other party may properly read from such transcript parts explaining that already read, or otherwise pertinent to the issues.

3. SALE—PRESUMPTIVE EVIDENCE.—A charge directing the jury, that if, in pursuance of an agreement for the sale of land, an irrevocable power of attorney was made by the vendor to the vendee, and under that power the vendee had sold for his own use, the heirs of the vendor could not set aside the conveyance: *Held,* Not to be error, where facts showed indebtedness by the vendor or maker of the power, and his neglect to look after either the land or its proceeds for a great lapse of time.

4. ACT BY ATTORNEY—EVIDENCE.—Where the deed on its face does not appear to be made by the attorney named therein, the identity of the party making the deed with the constituent in a power offered as evidence of authority to make the deed, may properly be submitted to the jury.

5. TESTIMONY OF PARTIES.—Answers to interrogatories of the adverse party not strictly relating to the subject-matter of the interrogatory, would, it seems, since the act of 1871 (Paschal's Dig., art. 6826) making parties competent witnesses, be admissible.

6. UNDERSTANDING OF WITNESS AS TO FACTS NOT TESTIMONY. — A witness may not testify to his understanding of transactions between others, not of his personal knowledge.

ERROR from Milam. Tried below before the Hon. Spencer Ford.

This was an action of trespass to try title, brought by Hough and Connolly, appellees, March 13, 1871, for two thousand eight hundred and sixty-six acres of the Samuel Frost league of land, against Josiah Hill, James Taylor, William White, and others living on the land, and against B. F. Hammond and W. H. Hamman, who were claiming adversely to Hough and Connolly, the plaintiffs. After suit and before trial, a part of the squatters attorned to plaintiffs, and the balance to Hammond and Hamman.

By amended petition plaintiffs set out their title from the government, deraigning through James S. Steele, and from Steele to Livermore by two powers of attorney, one dated October 4, 1838, and the other dated February 25, 1839, and irrevocable and coupled with an interest; deed from Livermore to James Bailey; from Bailey to Kimball; from Kimball and his heirs to plaintiffs.

Defendants Hammond and Hamman pleaded their title and quit-claim deeds from the children, heirs of Steele, dated in 1871; and they also pleaded fraud in the deed from Livermore to Bailey, concealment, and ignorance of Steele and his heirs of the fraud.

Plaintiffs denied the fraud; pleaded stale demand and limitation under the Spanish law of two years; and further, that the land in controversy and other lands were turned over and sold by James S. Steele to Livermore in satisfaction of a debt of $3,100, and that the titles were put in Bailey by their mutual consent, to hold for Livermore, because Livermore, being an alien to Texas, could not hold land in Texas.

On the trial it was agreed that the title was in James S. Steele.

Plaintiffs then read in evidence two powers of attorney

made by James S. Steele, one on the 4th of October, 1838, to Alexander H. Livermore, authorizing him to sell, as agent for said Steele, nine thousand five hundred acres of land, more or less, which power of attorney was recorded in Milam county June 3, 1839. (This was a notarial copy of an instrument executed before John Harvey with instrumental and assisting witnesses, and issued the same day executed.) Also an irrevocable power of attorney from James S. Steele to Amos H. Livermore, dated February 25, 1839, in the body of which power the name is first written Alexander, which is erased and the name Amos written over it in the same handwriting. This power was acknowledged before the notary, Thomas Harvey, and the erasure is noticeable in the certificate. This power of attorney authorized Livermore to sell the lands in controversy and other lands, and is declared to be "irrevocable by the said Steele or his heirs."

Plaintiffs read deed made by A. H. Livermore, agent and attorney in fact, from James S. Steele to James Bailey, dated June 3, 1839, and acknowledged same day before W. D. Thompson, recorder of Milam county. Also deed from Bailey to Samuel Kimball, of date January 5, 1848, for the land.

Plaintiff Connolly had a deed for an interest in the land from Kimball, and Hough held another interest by conveyance from Kimball's heirs.

The defendants read quit-claim deeds to themselves from parties shown to be the heirs of James S. Steele, of date January 24 and May 18, 1871.

Defendants proved by Susan Kerr, a daughter of James S. Steele and one of the vendors of Hammond and Hamman, that she was born in 1835. William H. Steele, Jr., and James S. Steele, Jr., also children of James S. Steele and vendors of defendants, testified that they were born, one in 1836 and the other in 1838. All testified that they were ignorant of the fact of Livermore's agency for their father, or that he made a deed for the lands to Bailey, or that he took a defeasance from Bailey in June, 1839; and that they were ignorant of the pro-

ceedings in the District Court of New Orleans, Louisiana, in reference to these lands. James S. Steele died in 1847.

It was also shown that the widow of James S. Steele, in 1860, had employed a lawyer, who investigated as to her rights in this land, and who advised suit; that suit for Steele's heirs had been brought in 1860 for the land; that the attorney had negotiated the sale to Hammond and Hamman.

The plaintiffs then read from a transcript from the records of the Second District Court of the parish of Orleans, Louisiana, that Samuel Kimball was curator of the succession of A. H. Livermore, deceased, and in 1846 said curator procured from said court an order to sell the following land or contract:

"REPUBLIC OF TEXAS,       )

"*County of Harrisburg.* $

"By this public instrument, this day, before me, William Fairfax Gray, a notary public in and for the county of Harrisburg aforesaid, duly commissioned and sworn, personally came and appeared the citizen James Bailey, who declared that whereas he has this day, by an act of procuration, authorized and empowered Amos H. Livermore, of the city of New Orleans, to sell on his own account and in his name certain lands which were conveyed to him by James S. Steele, viz., one half-league of land on the west bank of the river Brazos, in the county of Milam, the same that was originally granted by the Mexican Government to Samuel Frost, and by the said Frost conveyed to William H. Steele, and by William H. Steele to James S. Steele, and by James S. Steele to this appearer: * * Now, the said appearer further declares that the lands hereinbefore described are only held by him as the agent of the said Livermore, to whom they rightfully belong; but said Livermore being an alien to Texas, they were constituted the better to hold and protect them for the use and benefit of the said Amos H. Livermore, his heirs and assigns; and should the said Livermore not effect a sale of said land as he is authorized by this appearer to do, appearer does hereby covenant and bind himself, his heirs, &c., to make full and legal con-

veyance of said land to the said Livermore, his heirs or assigns, whenever required so to do. And he hereby acquits and discharges his said attorney from all responsibility for and on account of the proceeds of any sales that he may make of these lands; they being his property, he is fully entitled to retain the proceeds for the benefit and use of himself, his heirs, &c. In testimony whereof," &c. (Signed before two witnesses and the notary public.)

Also from the record, further, that J. Lawson Lewis, sheriff of the parish of Orleans, Louisiana, sold said land; that James Connolly, bidding $400 and being the highest and best bidder, became the purchaser; and that said sheriff executed a deed for said land or contract to James Connolly on the 8th of September, 1846; the order of court, advertisement by the sheriff, and the deed to Connolly being all set out entire in the transcript.

James Bailey, witness for defendants, testified that he knew nothing more about said bond made by him to Livermore, and of the deeds made by Livermore to him a few days before, than appears from the face of the papers; that he paid nothing to Livermore, nor did Kimball pay witness anything.

Defendants also read part of the deposition of plaintiff Connolly, taken in answer to interrogatories by the defendants. The testimony of Connolly sufficiently appears from the opinion.

The plaintiffs then read, over objection, other parts of Connolly's deposition. (See the opinion.)

Plaintiffs then, over objections, read from the transcript from the Second District Court, &c., and pertaining to the succession of Amos H. Livermore, had in 1839, as follows:

"Papers relative to certain lands owned by the said Amos H. Livermore in the Republic of Texas.

"The original of a public act executed before William Fairfax Gray, a notary public in and for the county of Harrisburg, on the 10th of June, 1839, by James Bailey, declares that a certain tract of land which was conveyed to him by James S.

Steele, namely, one half-league of land on the west bank of the river Brazos, in the county of Milam, is only held by him as agent of the said A. H. Livermore, to whom the same rightfully belongs, which act or instrument in writing I, the said notary, paraphed and marked by the letter A.

"A power of attorney executed before the same notary on the 10th of June aforesaid by the said James in favor of said A. H. Livermore, relative to the said lands, which instrument in writing I, the said notary, have paraphed and marked by the letter B.

"A power of attorney executed before Thomas Harvey, a notary public in and for the county of Matagorda, in the said Republic of Texas, dated Matagorda, on the 4th of October, 1838, by James S. Steele to the said A. H. Livermore, in relation to the said lands, which instrument in writing I, the said notary, have paraphed and marked by the letter C.

"A deed of sale of the said lands by A. H. Livermore, attorney in fact of J. Steele, to James Bailey, dated at Nashville, Texas, on the 3d of June, 1839, and acknowledged before J. W. D. Thompson, clerk of the court and county recorder in and for said county of Milam, which instrument in writing I, the said notary, have paraphed and marked by the letter D.

"A deed of sale of said lands by William H. Steele to James Steele, forming the chain of title of said property, which instrument I, the said notary, have paraphed and marked by the letter E.

"And here the said curator of the said estate declared that the said lands still belong to the said A. H. Livermore from said James S. Steele, and taken in payment of the sum of $3,100 due to him by Messrs. Steele & Lewis, of Matagorda, said sum being the amount of a note of $1,473.80 subscribed by the said Steele & Lewis to the order of the said A. H. Livermore, dated at New Orleans, the 14th of August, 1838, and payable four months after date, which note is in the possession of him, the said curator, and of a balance of account due by said Steele & Lewis to the said A. H. Livermore.

"And here the said curator has produced the above-mentioned note of the said Steele & Lewis, which I, the said notary, at the request of the said curator, have inventoried in the following manner for memorandums: A promissory note drawn by James Steele for Steele & Lewis for the sum of $1,473.80 to the order of the said A. H. Livermore, dated New Orleans, on the 14th of August, 1838, and made payable four months after date."

The instructions to the jury are sufficiently indicated in the opinion.

Verdict and judgment for plaintiffs. Hammond and Hamman appeal by writ of error.

*Hamman*, for plaintiffs in error.

I. The power of attorney from Steele to Alexander H. Livermore was improperly executed. A notarial copy only was produced. Nor had a notary public authority to take proof of deeds at that time. (Clay *v.* Holbert, 14 Tex., 189; McKissick *v.* Colquhoun, 18 Tex., 148; Martin *v.* Parker, 26 Tex., 253; Paschal's Dig., arts. 3706, 4678, 4973; 1 Land Laws of Oregon, California, and Texas, 297, 298.)

II. The power of attorney could not have been admitted as an ancient instrument. (Stroud *v.* Springfield, 28 Tex., 662; 1 Greenl. Ev., secs. 49, 141, 146, and notes; 2 Phill. Ev., 476 and note, 430; Willson *v.* Betts, 4 Denio, 201–213.)

III. The copy of the pretended power of attorney appears to have been recorded without any authentication. (Beaty *v.* Whitaker, 23 Tex., 526; Word *v.* McKinney, 25 Tex., 268; Lambert *v.* Weir, 27 Tex., 363; Holliday *v.* Cromwell, 26 Tex., 193; Paschal *v.* Perez, 7 Tex., 357; Herndon *v.* Casiano, 7 Tex., 332; Paschal's Dig., art. 4978.)

IV. The court submitted, in the fourth instruction, issues not made in the pleadings nor supported by the testimony, touching the effects of an agreement between Steele and Livermore for the sale of the lands, in connection with the evidence of the condition of the parties and their dealings

together.   (Blankinship *v.* Douglas, 26 Tex., 228; Andrews *v.*
Marshall, 26 Tex., 215; Gay *v.* McGuffin, 9 Tex., 503; Gray *v.*
Burk, 19 Tex., 232; Duffell *v.* Noble, 14 Tex., 640.)

*H. D. Prendergast,* for defendants in error.

I. The effect of the irrevocable power of attorney from J.
S. Steele to A. H. Livermore, of February 25, 1839, was to
authorize Livermore to dispose of the land free from the
equities of Steele.   (Story on Agency, sec. 489, and notes;
4 Kent's Comm., 588; 16 Vesey, 135; Dunlap's Paley on
Agency, 185, and note.).

II. The claim of plaintiffs, if any ever existed in Steele or
his heirs after 1839, is now a stale demand, barred by lapse
of time, there being no concealment on the part of plaintiffs,
or those through whom they claim.   (1 Story's Eq., 316;
Story on Agency, secs. 210, 253, and notes; Ripley *v.* Withee,
27 Tex., 17; Munson *v.* Hallowell, 26 Tex., 475; Barrett *v.*
Kelly, 31 Tex., 480; Howard *v.* Colquhoun, 28 Tex., 145; 41
Ala., 100; 4 Cowen, 742; 3 Yerg., 201; 8 Cowen, 361; 3
Cranch, 503; 1 McL., 146; 1 How., 189.)

*Terrell & Walker,* also for defendants in error.

GOULD, ASSOCIATE JUSTICE.—The first assignment of error
is to the admission in evidence of the power of attorney by
Steele to Livermore of October 4, 1838.   As another power
of attorney, of date February 25, 1839, was admitted, and was
ample to authorize the deed to Bailey if the Livermore who
executed said deed and the Livermore named in the latter
power of attorney were the same person, and as that question
was submitted to the jury and must have been found in the
affirmative, we are unable to see that it is material to inquire
whether the first power of attorney was properly admitted or
not.

Moreover, the facts developed in the case indicate so satis-
factorily that the A. H. Livermore making the deed and the
Amos H. Livermore receiving the irrevocable power of attor-

ney are the same person, being the Livermore whose estate was in 1840 administered in Louisiana and who received a title bond from Bailey, that we would not be justified in reversing the case for the erroneous admission of further or cumulative evidence of authority to make that deed.

The defendants having themselves read in evidence a part of the transcript of the proceedings of the Second District Court of the parish of Orleans in the succession of A. H. Livermore, objected to the admission of a further transcript of those proceedings, on the ground that the evidence was irrelevant, secondary, and hearsay, and calculated to prejudice and mislead the jury.

As explaining more fully the parts of the same proceedings already adduced in evidence by defendants, as primary evidence of the fact that Livermore's representative publicly claimed the lands at that time, and as showing how readily Steele might have ascertained the fact, if, being ignorant of what had been done, he sought some account of Livermore's proceedings under the power of attorney from him or his representative, we cannot say that the evidence was secondary, hearsay, or inadmissible.

The seventh assignment of error objects to that part of the charge which denied the right of Steele, his heirs or their vendees, to set aside the conveyance to Bailey, if it was made in accordance with an agreement between Steele and Livermore in payment of an indebtedness, and the form of a power of attorney was resorted to because he was an alien—the objection being that this issue was not raised by the pleadings or evidence. Certainly, if such was the object of the transaction, the charge of fraud in making the deed to Bailey was unfounded. Whilst the power of attorney, although irrevocable, does not purport to be a sale, the subsequent action — or, rather, inaction—of Steele points so strongly to his abandonment of all claim to either the land or its proceeds, that we cannot say there was no evidence authorizing the inference that the transaction was originally intended to be a sale. Not

that such intention would make it a sale, but that it would be an answer to the charge of fraud, the main issue in the case.

The charge of the court submitting the question of identity of the Livermore named in the different instruments, was, substantially, in compliance with the rule laid down by this court in a former appeal of this cause. (36 Tex., 657.)

The interrogatories propounded to plaintiff Connolly by defendants naturally called forth an explanation tending to vindicate his honesty and motives in the entire transaction. The answers of the witness were objected to, in writing, because not closely connected with the facts on which he had been interrogated. Our opinion is, that, tested by the provisions of the District Court act of 1846, on the subject of discovery, (Paschal's Dig., arts. 3748–3750,) the answers were objectionable. But since the enactment of the statute of 1871, (Paschal's Dig., art. 6826,) making parties competent to testify in their own cases without reference to the wishes or action of the opposing parties, we are of opinion that the failure of the court to exclude the testimony of a party, in itself competent, because not strictly connected with the interrogatories propounded to him, would not be error, or, at least, not such error as would lead to a reversal.

But it appears in the statement of facts that these answers were objected to orally as "irrelevant and wholly incompetent," and appellants submit a proposition that they "were not competent evidence, and calculated to prejudice the minds of the jury." We have had some doubt whether the question of the competency of these answers as evidence generally, as being statements of the understanding or belief of the witness, appeared from the record with sufficient certainty to have been made and reserved below, to entitle appellants, on that ground, to the benefit of it in this court. There is no bill of exceptions other than the recitals in the statement of facts above set forth, but we have finally concluded that the oral objections, in connection with the objections in writing, must have called the attention of the court below to the point now sub-

mitted in appellants' proposition, and that at all events they are entitled to have it considered. We are strengthened in this conclusion by an examination of the counter-propositions in the brief of appellees, which simply assert the admissibility of the depositions.

A part of Connolly's answers objected to is as follows:

"At the purchase of said bond by me, I understood that the lands described in said bond had been acquired by Amos H. Livermore from James S. Steele; and I further understood that the said Steele had become indebted to said Livermore for merchandise at the city of New Orleans, in which said city said Livermore was a merchant, and said Steele, being unable to liquidate said indebtedness otherwise, turned over the said lands described in said bond to said Livermore as aforesaid; and I also understood that the lands described in said bond belonged to said Livermore, in perfect good faith, and that the titles were put in Bailey merely because Livermore, being at the time an alien to Texas, could not hold land in Texas."

We think this evidence of what the witness understood as to the nature of the transactions between Steele, Livermore, and Bailey, was inadmissible, and should have been excluded. The jury may have been misled by this evidence. One of the inquiries submitted to them, was whether the parties to the irrevocable power of attorney intended a sale. Connolly was allowed to tell what he understood had been their intention.

How he understood the matters testified to, did not appear; and the fact that he so understood them, was not, of itself, admissible evidence.

Our opinion is, that because of this error in the failure to exclude improper evidence, which may have misled the jury, the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.

[This case was decided at Austin Term, 1879, but did not reach the reporters in time for 51 Texas.]