DUPUY v. DAWSON.

(Court of Civil Appeals of Texas. Amarillo. April 6, 1912. Rehearing Denied May 11, 1912.)

1. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSIONS OR FACT—CONVERSATIONS.

In an action involving the existence of a partnership between plaintiff and defendant to buy cotton, the admission of a deposition in which the witness stated that he could not remember the exact words used in conversations between him and defendant, but that he was led by the conversation to believe that plaintiff and defendant were handling his cotton together, so that although he had already promised it to plaintiff he sold it to defendant, was not error; the witness' statement of what he was led to believe not being a conclusion, but a statement of the substance of the conversation.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

2. TRIAL (§ 260*) — INSTRUCTIONS — SPECIAL INSTRUCTIONS COVERED BY MAIN CHARGE.

Where the principal issue in a case was the making of an agreement between plaintiff and defendant, establishing a partnership for the purchase of cotton, an instruction that to constitute a partnership there must be a valid agreement to enter into a partnership, which must be executed, and that a mere understanding that a partnership would be formed at some future time would not constitute a partnership, sufficiently covered the issue, and a special instruction that while acts and conduct might make parties partners as to third persons, to constitute a partnership as to each other, there must be an intention that such relation should exist, and that unless plaintiff and defendant intended to share in the profits and losses in the purchase and sale of cotton, the jury should find for plaintiff only the amount conceded by defendant, was properly denied.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

3. PARTNERSHIP (§ 262*)—DISSOLUTION—MUTUAL CONSENT.

Where the evidence showed the formation of a partnership for the handling of cotton during two seasons, the denial of an instruction that, if plaintiff by his acts or conduct indicated an intention to cease operating with defendant, a new agreement was necessary to the continuation of the partnership, was not error, where the evidence showed that, although plaintiff had stated to defendant's bookkeeper that he would have nothing more to do with defendant, it also showed that they had thereafter purchased cotton together, and it did not show that the question of dissolution was ever discussed between them, since the partnership could not be dissolved except by mutual consent or in some mode provided by law.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 602, 605, 606; Dec. Dig. § 262.*]

4. APPEAL AND ERROR (§ 1004*)—REVIEW—VERDICT—PREJUDICE.

A verdict for the exact amount shown by plaintiff's testimony cannot be vacated as rendered through prejudice and without regard to the evidence, although plaintiff's testimony was contrary to the auditor's report, which was not objected to, and hence when a remittitur has been entered it will be permitted to stand for the amount shown by the report.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

5. REFERENCE (§ 99*) — REPORT — OPERATION AND EFFECT.

The correctness of an auditor's report, to which no objection or exception was filed, cannot be assailed on a trial by other evidence, and evidence contradicting the report, although admitted, cannot form the basis of a verdict or judgment.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 148–156; Dec. Dig. § 99.*]

Appeal from Hardeman County Court; W. S. Banister, Judge.

Action by Bob Dawson against W. R. Du-

puy. From a judgment for plaintiff, defendant appeals. Affirmed.

H. W. Martin and Decker & Clarke, of Quanah, for appellant. W. T. Perkins, of Quanah, for appellee.

GRAHAM, C. J. This suit originated in the county court of Hardeman county, by appellee suing appellant for the sum of $829.-81, alleged to be one-half of the amount of loss sustained on certain cotton and one-half expense incurred in handling the same; appellee's allegations being in effect that appellant and appellee were partners in the handling of said cotton, and that appellee had furnished the money for the firm to purchase the same and had furnished the expense incurred in handling same. There is also an alternative plea by appellee that, if the facts alleged did not constitute a copartnership, the cotton had in fact been purchased and handled under an express agreement between appellee and appellant that the same should be purchased, handled, and sold, and the profits or losses divided equally between them, and that, relying on said contract, appellee had advanced the money to purchase said cotton and handled same, and that a loss had been sustained in the aggregate sum of $1,659.62, and appellee sued to recover one-half of said amount. Appellant answered, denying copartnership under oath, and denying that he had agreed to sustain any part of the loss or share in any part of the profits in the handling of the cotton, except as to 60 bales thereof, as to which he admitted that he had agreed to handle same on a basis of dividing profit and losses with appellee, and admitted that appellee had advanced the money to purchase said 60 bales of cotton, as well as to take care of the expense in handling same, and prayed for an accounting as to said 60 bales. At the instance of both appellant and appellee, the court appointed an auditor, with specific instructions to ascertain the condition of the transactions alleged in appellee's petition, as to each of the several purchases of cotton, showing the profit or losses and amount as to each, and requiring said auditor to make his report show the amount of profit or loss as to the entire 268 bales of cotton involved in appellee's pleading in one item and the entire amount of profit or loss involved in the 60 bales of cotton mentioned in appellant's pleading. The record shows that the auditor's report was filed in court and showed that there was a total loss on the handling of the 268 bales of cotton of $1,453.17, and that there was a total loss in the handling of the 60 bales of cotton (which was a part of the 268 bales) in the sum of $261.22. The record fails to show that any exceptions or objections were filed to the auditor's report, either for form or because of any supposed error therein. The case was tried before a jury, which returned a verdict in favor of appellee and against appellant in the sum of $829.81, upon which judgment was entered; that thereafter appellee filed a remittitur to be credited on said judgment in the sum of $103.23. The record shows, also, that during the progress of the trial below, appellee and appellant introduced testimony without objection bearing upon the question of the amount of loss sustained on the 268 bales of cotton, and the verdict of the jury, unquestionably, was rendered in accordance with their view of this testimony introduced. The record also shows that the auditor's report was introduced as evidence, and an inspection of the record shows that the remittitur entered by appellee makes the judgment comply with the amount that would be due appellee by appellant if the auditor's report be correct and appellant owed one-half of the loss. Appellant's motion for a new trial having been overruled, the case is before us on the assignments of error discussed below.

[1] Under appellant's first assignment, contention is made that the trial court erred in permitting the depositions of one N. L. Jones to be read in evidence to the jury; the question propounded to said witness being as follows: "This is a suit for an accounting of certain partnership, alleged by plaintiff to have existed between him and defendant during the fall and winter of 1909 and 1910, for the purpose of buying and selling cotton. Please state whether or not you had any conversation or conversations with the defendant, W. R. Dupuy, in which the facts as to whether Dupuy and Dawson were or were not partners in the cotton bought for either or both of them during the cotton season of 1910, or during any part of said season, and if you had any such conversations, please detail all that was said in any and all such conversations, giving the time, place, and names of the parties present at each and all of said conversations. If you cannot remember the exact words used in such conversations, then give the substance of what was said as fully as you can remember it." To which question the witness answered: "Yes, I had a conversation with Mr. Dupuy in the early part of the fall of 1909, on Saturday night, over the 'phone, relative to a lot of cotton I had on hand. He offered 12.95 per hundred for the cotton. I stated that I wanted 13 cents. He did not offer me this, but called me up in about 20 minutes and offered me 13 cents. I told him I had promised Bob Dawson not to sell the cotton until I had given him another chance, as Dawson had made me an offer. Subsequent conversations with Mr. Dupuy led me to believe that Dupuy and Dawson would handle the cotton together, so much so in fact that I sold the cotton to Dupuy without calling up Dawson again. This is the substance of

the conversation. I cannot recall the exact words." Appellant objected to the latter part of said answer, wherein the witness states as follows: "Subsequent conversations with Mr. Dupuy led me to believe that Dupuy and Dawson would handle the cotton together, so much so that I sold the cotton to Dupuy without calling up Dawson again" —and moved the court to exclude the same from the jury, on the ground that that part of said answer is purely a conclusion of the witness, and the witness does not anywhere in said answer give .said language or the substance of said conversation of said defendant from which he deduced the conclusion testified to. In support of appellant's contention, we are cited to the case of Hammond v. Hough, 52 Tex. 73, and others, which we have examined; but we think neither of which are in point in this case. The record in this case shows that appellee made several different purchases, each of which were included in the 268 bales of cotton in controversy; the one made from N. L. Jones being one of the lots of cotton in controversy. It will be observed that the witness Jones states that he is unable to give the language used, and we think his answer amounts to nothing more than the substance of the conversation had by him with Dupuy, and that this answer was admissible as throwing light upon the controversy between appellant and appellee—at least as to the purchase and handling of the Jones cotton. Had the testimony of this witness tended to show that no partnership relation existed between Dupuy and Dawson, the same would not have been admissible as against Dawson, for the reason that it would have been hearsay as to him, in so far as the same bore upon the question of whether or not there was a partnership relation existing as to that cotton between Dawson and Dupuy. Because we think the testimony objected to admissible, the assignment will be overruled.

[2] Under appellant's second assignment of error, complaint is made that the trial court refused to give in charge to the jury his first special charge, which is as follows: "You are charged: That two persons may enter into a business transaction and by their acts and conduct would make them partners as to these parties, but that in order to constitute them as partners as to each other, it must be the intention of the parties at the time that the partnership relation should exist between them. That if it was not the intention of the plaintiff and defendant at the time they formed such an agreement that they should each share in the profits or losses in the purchase and sale of all cotton in the city of Quanah bought by. either, and that the purchase of all cotton whether by one or the other, and that a partnership was intended, then you will find for plaintiff only the amount that defendant

alleges there was a partnership in, to wit, the 60 bales of the J. Y. Hughes cotton." The trial court in his main charge used this language: "You are further instructed that, in order to constitute and form a contract of partnership, there must be a valid agreement to enter into a partnership, and this agreement or contract must be executed. A mere understanding or agreement between two or more persons that they will at some future time enter into or form a partnership will not of itself constitute a partnership." The principal issue on the trial of this case below was whether or not there had been an agreement between appellant and appellee establishing such a relation between them as entitled appellee to recover from appellant one-half of the losses sustained on the 268 bales of cotton, and we think the portion of the main charge of the trial court above quoted fairly and correctly submitted to the jury the issue raised that there was no error in refusing to give the special charge requested, and for this reason this assignment will be overruled.

[3] Under appellant's third assignment, complaint is made that the trial court erred in refusing to give to the jury his special charge No. 2, as requested, which is as follows: "You are charged, if from the testimony you believe that there was a disagreement between plaintiff and defendant, and that plaintiff by his words and acts showed an intention to cease operation together in the purchase and sale of cotton, then in the purchase and sale of cotton there must be another agreement to bind them or either of them, and it would only bind the parties to the amount that the parties agreed to, unless you find that there was an agreement to buy and sell in the interest of each other as partners." The record tends to show that some time after the opening of the cotton season in 1909, appellee, on one occasion, made the statement to appellant's bookkeeper, in the absence of appellant, that he would have nothing more to do with appellant. The record also shows, however, that when appellee's attention was first called to his having made this statement, he insisted that he meant that after the season of 1909–10, he would conduct his own business, and it also tends to show that thereafter appellant and appellee purchased cotton together. On this testimony, appellant contends that the question of dissolution of partnership, if ever existed, was raised, and that his special charge should therefore have been given. There is nothing in the record tending to show that, even if appellee desired a dissolution of the partnership,. if one had ever existed, appellant consented thereto, or that the question of a dissolution was ever discussed between them. As we view the law, if in fact a copartnership had been actually formed between appellant and appellee, for

the handling of cotton during the season of 1909-10, this relation could not be legally severed without the consent of both parties or in some mode provided by law, and we think the testimony introduced not such as to raise the issue of a dissolution of a copartnership, if in fact one had ever existed, and we therefore hold that it was not error to refuse to give the special charge requested.

[4] Under appellant's fourth assignment of error, it is claimed that the verdict of the jury is contrary to the evidence and shows that the verdict was rendered through prejudice and without regard to the evidence in the case. Appellee, in his pleadings, alleged that a loss in the aggregate of $1,659.62 had been sustained as a result of the handling of the 268 bales of cotton, and while appellee was testifying on the trial below, without undertaking to state the various items, he testified that the total loss sustained was as alleged in his petition. It is true that the auditor's report, which was not objected to in any way, showed that the total loss was $1,453.17, while the verdict of the jury was for the sum alleged in appellee's pleading. As appellee was permitted to so testify, the record shows upon its face, to our mind, that the jury adopted appellee's version of the matter, and we find nothing in the record tending to show that the jury were influenced by anything improper.

[5] As the auditor's report, however, was not in any way objected to, we think appellee properly entered the remittitur so as to reduce the amount of the judgment to the amount of damage or loss, as shown by the auditor's report. As we understand the law, where the report of an auditor is not in any way excepted to, its correctness cannot be assailed by other testimony on the trial, and the fact that in this case other testimony was introduced which tended to assail its correctness was, we think, without warrant of law and could not form the basis of a verdict or judgment. Harper et al. v. Marion County, 33 Tex. Civ. App. 653, 77 S. W. 1044; Boggs v. State, 46 Tex. 10. We note from the remittitur filed by appellee, as same appears in the transcript, that while he remits $103.23 of the judgment rendered on the verdict of the jury, he states in the remittitur that that leaves a balance of $746.58. This latter statement is clearly an error, and would leave $726.58 for which the judgment below was rendered, after the entry of the remittitur.

Finding no error in the record requiring a reversal of the judgment of the case, the judgment of the trial court will here be affirmed for the sum of $726.58, the correct amount of the judgment below, and it is so ordered.

HALL, J., not sitting.