John H. JONES, Appellant,

v.

UNITED STATES FIRE INSURANCE COMPANY, Appellee.

No. 7732.

Court of Civil Appeals of Texas.

Amarillo.

June 26, 1967.

Rehearing Denied Sept. 5, 1967.

Merchant & Barfield, J. Jerry Merchant, Amarillo, for appellant.

Stokes, Carnahan & Fields, Richard E. Stokes, Jr., Amarillo, for appellee.

CHAPMAN, Justice.

Appellant, John H. Jones, sued United States Fire Insurance Company, insurer for Will Rogers Range Riders, Inc., a riding and roping club (his employer on January 2, 1966), to recover workman's compensation benefits for accidental injuries sustained when his pickup driven by his minor son collided with a train as he and his son were proceeding from Amarillo to Hereford. Appellee insurer's motion for summary judgment was granted by the trial court and this case represents the appeal therefrom. The sole legal question before us is whether the pleadings, depositions and affidavits established as a matter of law that such injuries were not sustained in the course of his employment for assured. We hold they established as a matter of law that such injuries were not sustained in the course of his employment.

The record made by the summary judgment components shows appellant was hired in July 1965 to care for the club's grounds, horses and roping steers and he and his family lived on the second story of the Range Rider's Clubhouse located on the grounds.

For the purpose of this appeal only, appellee admitted: "The employment contract required Jones to furnish his own workhorse to be used in caring for Range Rider's property and in working the club's livestock." They furnished him one stall for his horse. The club members' horses and steers were out on pasture at times and had to be rounded up and brought into their stalls to be fed and watered. LeRoy Foster, supervisor of work activities at Range Riders, had told Jones he had to own his own horse. Soon afterwards he bought an eight-year old mare but when he learned Range Riders did not permit mares on the premises, he traded her for a stallion. He later acquired other horses but at the time in question he owned only a fifteen-month old colt he was grazing on wheat pasturage at Hereford. A week or two previous to January 2, 1966, he had sold the last horse he owned and kept at Range Riders for working the club's animals. On the morning of the accident he "probably borrowed a horse from Mr. McMenamin," president of the club, to round up animals for feed and water.

Jones was on call seven days a week and it was understood his two teenage boys who lived with him would help around the grounds when needed. They started feeding the horses and steers about 8:00 o'clock a. m. on the named date, Sunday, January 2, 1966, and by approximately 10:00 o'clock a. m. had completed the morning's chores for Range Riders. Appellant then decided he wanted to go to Hereford and pay for wheat pasturage on two colts, one ten months of age owned by his son and one fifteen months of age owned by him. They were travelling in appellant's pickup, he was furnishing his own fuel, Range Riders did not own or have any interest in the two colts they were going to Hereford to pay pasturage on and the colts were too young to ride or serve any purpose in performing appellant's services of employment.

Mrs. Jones' deposition showed that she had no reason to believe her husband was going to Hereford on the Sunday morning of January 2, 1966, to do anything for Range Riders or to do anything for them on the way back, but only to pay pasturage on the two colts.

In the supplemental affidavit of appellant shown in the record he stated he would not have had any horses if he had not gone

to work for Range Riders, " * * * because other than my job out there, I had no use at all for these horses." He also stated:

"Although Mr. Foster did not personally and orally direct me to go to Hereford on the particular day that I went I understood that it was part of my job to go over there and take care of my own horses, as the club had already told me, through Mr. Foster, that I had to own my own horses. I sure felt like that I had been directed by the club to go over to Hereford on that day.

"To my knowledge, I was working for the club at the time the accident happened, taking care of my own horses, and that was part of my job."

Mr. Foster's affidavit shows he hired appellant " * * * to take care of the club grounds, horses and livestock, and to do general maintenance work about the premises."

" * * * Plaintiff was under my supervision and control as to the work to be done and the details thereof at the club * * * I had no knowledge that Plaintiff was going to Hereford, Texas, or why he was going. The pickup in which Plaintiff was riding at the time of the accident was his personal pickup. The club furnished Plaintiff a pickup to use in his work and about the club grounds. At the time of the accident the trip to Hereford was not a part of the Plaintiff's contract of employment with the club. The expense of the trip to Hereford on the occasion in question was not paid for by the club. I did not direct or request the Plaintiff to go to Hereford on the occasion in question for any purpose. I did not exercise any control or supervision over the Plaintiff in his going to Hereford at the time of the accident.

"To my knowledge Plaintiff was not on any mission for or business of the club at the time of the accident."

"Words and phrases defined" in Article 8309, Section 1, Vernon's Tex.Civ.St., states:

"The term 'injury sustained in the course of employment,' * * * shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

In 1957 the legislature enacted Section 1b under Article 8309. The first sentence thereof provides:

"Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment."

Since this is a summary judgment case, we must follow certain rules laid down by the Supreme Court of Texas. Mr. Justice Greenhill speaking for that court in Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.1965) has recently spelled out a number of those rules in the following language:

"The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. Tigner v. First Nat'l Bank, 153 Tex. 69, 264 S.W.2d 85 (1954); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. Valley Stockyards Co. v. Kinsel, 369 S.W.2d 19 (Tex.Sup.

1963); Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93 (1954). If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. Cowden v. Bell, 157 Tex. 44, 300 S.W.2d 286 (1957); Smith v. Bolin, supra; Gulbenkian v. Penn, supra. Evidence which favors the movant's position is not considered unless it is uncontradicted. If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony. Cochran v. Woolgrowers Central Storage Co., 140 Tex. 184, 166 S.W. 2d 904 (1943). This exception is especially true where the opposite party has the means and opportunity of disproving the testimony, if it is not true, and fails to do so. Valley Stockyards Co. v. Kinsel, supra; James T. Taylor & Son, Inc. v. Arlington Ind. School Dist., 160 Tex. 617, 335 S.W.2d 371 (1960); Owen Dev. Co. v. Calvert, 157 Tex. 212, 302 S.W.2d 640 at 642 (1957); McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722 (1943); Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 136 S.W.2d 207 (1940). After all the evidence has been sifted in this manner, the Court must determine whether the movant is entitled to a judgment as a matter of law."

■ There are also other rules in connection with a summary judgment case we must observe. "* * * affidavits must be made by competent affiants with personal knowledge of the statements in them, which statements must be so worded that if given on the witness stand they would be admissible as evidence." Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958). ·  '

■ Obviously, the statements by appellant that, "* * * I understood that it was part of my job to go over there and take care of my own horses," * * * "I sure felt like that I had been directed by the club to go over to Hereford on that day," "To my knowledge, I was working for the club at the time the accident happened," would not be admissible in evidence upon the trial of the case. "* * * opinions which are the result of a conscious process of deductive reasoning are usually rejected. The results of this ratiocinative process may appear in the form of a statement of the witness' understanding, impression, or belief, or it may appear in the form of what he thinks, supposes, or considers." Texas Law of Evidence, McCormick and Ray, 2d Edition, Section 1398, p. 228. See also Hammond v. Hough, 52 Tex. 63, 73 (1879).

If the affidavit, or other summary judgment components, showed such statements sworn to by appellant were facts from his own observation but that his observation was uncertain, or his recollection was unclear, the textual authority from which we have just quoted indicates a witness "* * * may qualify his testimony by the use of such phrases as 'I believe,' 'I think,' 'It is my impression,' without detracting from its admissibility." Such exceptions to the first quoted general rule under such textual statements do not apply here and appellant's statements as used in his affidavit that "* * * I understood," "I sure felt like," and "To my knowledge" would in our opinion not be admissible on the trial of the case on its merits and are therefore not proper for us to consider on this appeal. Tobin v. Garcia, supra.

■ It is uncontradicted in the record that the horse appellant was required to keep should be useable for the purpose of working the club's livestock and that the fifteen-month old colt was not such an animal on January 2, 1966. It is also uncontradicted that Mr. Foster was appellant's supervisor as to the work to be done and

the details thereof; that he had no knowledge appellant was going to Hereford on said day, or why he was going; that the club furnished him a pickup for his duties in connection with his employment; that he was in his own pickup when injured and the expenses of the Hereford trip were not paid by the club; that he did not direct Jones to go to Hereford on the occasion in question and he exercised no control or supervision over appellee in his going to Hereford. We are not considering Mr. Foster's statement to the effect that at the time of the accident the trip was not a part of the contract of employment. Such statement was a legal conclusion and would not suffice in establishing grounds for a summary judgment. Sparkman v. McWhirter, 263 S.W.2d 832 (Tex.Civ.App.—Dallas, 1953, writ ref'd); Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557 (1962).

 Applying all the rules that have been established by our Supreme Court on inferences that must be indulged against a movant for summary judgment, and the rules of evidence above related, this record reveals by all the summary judgment components that there is no genuine issue as to any material fact in the record before us. It is without contradiction in the record that the requirement for furnishing a horse by appellant was for its use in and about the pasture and premises in working the livestock belonging to Range Riders. One stall was furnished him for such type horse. The fifteen-month old colt simply served no purpose in that connection. This being without contradiction, assuming the hazards of street and highway travel to pay for his pasturage was outside the course and scope of his employment. As a general rule an injury received while using public streets and highways by an employee is not compensable because not incurred in the course of employment as required by the statute. Texas General Indemnity Company v. Bottom, 365 S.W.2d 350 (1963). "The rationale of this rule is that in most instances such an injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer." Texas General Indemnity Company v. Bottom, supra. None of the prerequisites of either Section 1 or Section 1b of Article 8309 are present in this record. Under the rules announced in Agricultural Insurance Co. v. Dryden, 398 S.W.2d 745 (Tex. 1965) and Texas General Indemnity Company v. Bottom, supra, construing Sections 1 and 1b of Article 8309, appellant at the time of his injury was not in the course of employment for Range Riders on his trip to Hereford to pay pasturage on a fifteen-month old colt which contributed nothing to his employment.

The summary judgment rendered by the court below is affirmed.