**Jimmy Lowell CANNEDY, a minor, by his Next Friend and mother, Lois Cannedy, and Lois Cannedy, Individually, Appellants,**

**v.**

**RELIANCE INSURANCE CO., Appellee.**

**No. 7782.**

Court of Civil Appeals of Texas.

Amarillo.

Feb. 26, 1968.

Rehearing Denied March 18, 1968.

Merchant & Barfield and Charles W. Fairweather, Amarillo, for appellants.

Culton, Morgan, Britain & White and James C. Sanders, Amarillo, for appellee.

CHAPMAN, Justice.

This is an appeal from a judgment rendered by the court notwithstanding the verdict. The jury found Jimmy Cannedy, a Globe-News Publishing Company, Inc. newspaper carrier, received an accidental injury while in the course of his employment as such carrier. Alleged error of the court in rendering the judgment notwithstanding such jury finding is the sole basis of this appeal.

Suit was filed by Jimmy's mother, as next friend, against Reliance Insurance Co., the alleged insurance carrier for the publishing company.

Jimmy was eleven years old at the time of the accident on July 15, 1966, and was as-

signed to route No. 5122. This area was bound on the north by N.E. 15th Street, on the south by Amarillo Boulevard, East, on the east by N. Johnson Street and on the west by N. Pierce Street. The accident in which he was injured occurred in the approximate center of the intersection of N.E. 15th and Orange Streets at about 2:00 P.M. He was traveling slightly east of south on Orange, a street running in a north-south direction outside the area included in his carrier route, and in the general direction of his home.

■ When the evidence concerning scope of employment in this case is indulged in its most favorable light for Jimmy, as we are required to do in a judgment n. o. v.,[1] he was returning to his home at 900 N. Hayes from an errand to seek the collection of two delinquent accounts owed him by Globe-News subscribers. These customers lived at 1411 N. Lincoln Street and 1405 N. Buchanan Street.

It is without contradiction in the record that each Globe-News carrier delivers papers on a prescribed route, is billed in advance on the first of each month on the basis of the previous month's average daily delivery and that his gross income is the difference between the amount paid for the papers by the carrier and the amount they collect from their customers. The collection responsibilities are strictly upon each carrier. He must pay the publishing company by the fifth of each month for the newspapers he expects to deliver during the ensuing month, and this without regard to whether such carrier has completed the collections for the previous month or any other previous period.

Jimmy's injuries were such that his memories are blank from approximately the time he left 1405 N. Buchanan Street until

he awakened in the hospital several days later. The evidence shows he had spent the forenoon and part of the afternoon at the Y.M.C.A. swimming and enjoying the other recreation facilities of the "Y". He started home from downtown Amarillo about 1:30 P.M., with his younger brother riding on the horizontal bar of his bicycle. At the corner of N.E. 8th and Fillmore they saw an older brother walking, so Jimmy let his younger brother off the bicycle at 1:45 to walk on home with his older brother. This location was about nine blocks away from the first stop he intended to make in an effort to collect his delinquent accounts. The next intended stop was about thirteen blocks from the intersection of Orange Street with N.E. 15th, where he was struck by an automobile. He remembers leaving 1405 N. Buchanan and starting up N.E. 15th but does not remember collecting any money nor if he went to 1411 N. Lincoln.

The statutory provisions controlling the question of whether Jimmy was in the course of his employment at the time of his injuries are found in Section 1 and 1b of Art. 8309, Vernon's Ann.Tex.Civ.St. Included in "Words and phrases defined" under Art. 8309, Sec. 1 is the following definition:

"The term 'injuries sustained in the course of employment,'

\* \* \* \* \* \*

"(4) \* \* \* shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

1. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952); Jara v. Thompson, 223 S.W.2d 941 (Tex.Civ.App.—San Antonio, 1949, writ ref'd); McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442 (1941).

In 1957, the legislature enacted Sec. 1b under Art. 8309. That enactment provides:

"Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

The Supreme Court of Texas announced its opinion in American General Insurance Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370, (1957) before Sec. 1b became effective on September 1, 1957. There the Court announced the general rule and several exceptions thereto concerning compensable injuries incurred in the use of public streets and highways while going to and returning from the place of employment, the general rule being that such injuries are not compensable because not incurred in the course of employment as required in Art. 8309.

In Jecker v. Western Alliance Insurance Co., 369 S.W.2d 776 (Tex.1963) the Court said: "The general rule is, in reality, even broader than we had occasion to state in Coleman," then stated the rule, and the fact that there are exceptions thereto. One exception mentioned is " * * * when in-

jury occurs while the workman is traveling on the public streets or highways pursuant to express or implied requirements of his employment contract." At the time of the latter opinion the 1b 1957 amendment to Art. 8309 was in effect but in Jecker the Court held such amendment did not abolish the exception just quoted. It stated that in Texas General Indemnity Co. v. Bottom, 365 S.W.2d 350, 353 (Tex.) it had recognized the legislature intended by the enactment of Sec. 1b "to circumscribe the probative effect that might be given to the means of transportation or the purpose of the journey rather than to enlarge the definition [of 'injury sustained in the course of employment'] found in Sec. 1." Chief Justice Calvert speaking for the Court in Jecker then observed that it would be " * * * wholly unjust to salesmen, servicemen, repairmen, deliverymen, and a host of others who may be required to use their own automobile in their work * * *."

Appellant appears to rely strongly on Jecker wherein the Court stated one of the exceptions to the general rule "is when injury occurs while the workman is traveling on the public streets or highways pursuant to express or implied requirements of his employment contract." Jimmy's situation so far as being engaged in the furtherance of the affairs or business of his employer immediately before and at the time of his unfortunate injury could not be compared to those just mentioned in the Jecker opinion i. e., salesmen, servicemen, repairmen, deliverymen, etc., whose employment, as used in the context in which they were mentioned by the Court, requires them to travel at their own expense in their own conveyances on streets and highways, either constantly or intermittently, and in so doing are accidently injured while thus exposed to risks growing out of their employment. As used in the context in which those classes were mentioned in the Jecker opinion they clearly would be "traveling on the public streets or highways pursuant to express or implied requirements of their

employment contract" while engaged in or about the furtherance of the affairs or business of their employers, whereas, Jimmy was returning from an attempt to collect two delinquent accounts which had nothing whatever to do with either express or implied requirements of his employment contract. He had already paid the Globe-News for the papers previously delivered to the two delinquent customers. As shown by his own testimony, it was for his benefit alone that he was seeking the collections, and we believe no other deduction can be made from the testimony except that he was proceeding toward home at the time of his injury after attempting to make such collections.

"Q. Now, at that time you had already paid your bill for the month of July, hadn't you?

A. Yes, sir.

Q. So you were really trying to get these accounts in for Jimmy Cannedy instead of Globe-News, were you not?

A. Yes, sir."

The record also shows that the only requirement of time in the delivery of the afternoon papers is that such delivery must be completed by 5:30. Even indulging the necessary inferences against a judgment rendered n. o. v., it could not be said from the evidence that Jimmy at the time of the injury was on the way to pick up the papers for the afternoon delivery. There is not any evidence in the record that they would have been available by that time.

Another case relied on by appellant is Janak v. Texas Employers' Insurance Association, 381 S.W.2d 176 (Tex.1964). There a drilling crew traveling in a carpool to work at their drill site had taken a longer route to Ecleto, the drill site, in order to pick up ice to keep their drinking water cooled during the working day. Each of the five members of the crew owned an automobile, which he drove every fifth day. On the day of the accident the claimant, Janak and the others were riding in Draplia's car. The Court of Civil Appeals opinion turned on the holding that it was Draplia's day to procure and transport ice and water, thus Janak was but a passenger in Draplia's car and was traveling only in the furtherance of his personal business to his place of employment. The broad question thus presented was whether a passenger member of a business or industrial carpool is in the course of his employment while traveling with the automobile owner-operator member whose journey was to perform a service in furtherance of the employer's business. The Supreme Court answered in the affirmative but the issues in that case have no relation involving Jimmy's situation prior to and at the time of his injury.

Clearly Jimmy could not meet the test of Art. 8309, Sec. 1(4) above quoted because from his own testimony he was not at the time of the accident "engaged in or about the furtherance of the affairs * * * of his employer."

Under the first sentence of 1b he would not have been in the course of his employment unless (1) transportation was furnished as a part of his contract of employment, or (2) was paid for by the employer, or (3) unless the means of such transportation was under the control of the employer, or (4) unless he was directed in his employment to proceed from one place to another place. He owned his own bicycle. It was not paid for by the employer. There is not any evidence from which even an inference could be drawn to show the means of transportation was under the control of Globe-News at the time of the accident, or at any time. He was under no direction in his employment to proceed from one place to another even if he had been delivering papers at the time, except to cover his route by 5:30 in any manner he pleased. The Supreme Court noted in Janak that the Court had held in Jecker that the "direction 'to proceed from one place to another place,' of which Section 1b speaks, can be an im-

plied direction. But by the very language of the section the implied direction to the employee must be 'in his employment,' and the travel thus must be in furtherance of the business of the employer. We cannot imply a direction to proceed from one place to another when the travel is for reasons or purposes purely personal to the employee." As heretofore stated, Jimmy admitted he had been on a mission to try to collect delinquent accounts for himself, in which Globe-News had no interest.

The second sentence of 1b has been suggested by at least one member of the Supreme Court as constituting a two-pronged test.[2] To meet that test Jimmy would have had to prove that the mission he was on at the time of the accident would have been made even had there been no personal or private affairs of his own to be furthered by the trip. By his own testimony he did not meet the test. He was on a mission for his own benefit. He also failed to prove that the trip he was on would not have been made had there been no affairs or business of the employer to be furthered thereby. His own testimony was that the mission was for himself instead of for the Globe-News. Jimmy failed in his proof under all the tests laid down under Art. 8309, Sec. 1(4) above quoted and under 1b of the same article. Agricultural Insurance Co. v. Dryden, supra; Texas Employers' Insurance Association v. Brown, 415 S.W.2d 260 (Tex.Civ.App.-Amarillo, 1967, writ ref'd n. r. e.); Jones v. United States Fire Insurance Co., 420 S.W.2d 160 (Tex.Civ.App.-Amarillo, 1967, writ ref'd n. r. e.); Jecker v. Western Alliance Insurance Co., supra; Texas General Insurance Co. v. Bottom, supra; Janak v. Texas Employers' Insurance Association, supra.

Accordingly, the judgment of the trial court is affirmed.

---

2. Concurring opinion by Justice Pope in Agricultural Insurance Co. v. Dryden, 398 S.W.2d 745, 747 (Tex.1966).