**TEXAS GENERAL INDEMNITY COM-
PANY, Petitioner,**

v.

**Mrs. Ruth BOTTOM, Respondent.**

No. A–9180.

Supreme Court of Texas.

Feb. 20, 1963.

Rehearing Denied March 20, 1963.

Crawford Martin, Hillsboro, Touchstone, Bernays & Johnston, Dallas, for petitioner.

Jack Sims, Hillsboro, Stark, Carroll & Davey, Gainsville, for respondent.

WALKER, Justice.

This suit for death benefits under the Workmen's Compensation Act was brought by the widow of Wilbur F. Bottom, deceased, an employee of Safety Convoy Company who lost his life in a highway accident. In response to the one special issue submitted, the jury found that Bottom's fatal injuries were sustained in the course of his employment. Judgment on the verdict in plaintiff's favor was affirmed by the Court of Civil Appeals with one justice dissenting on rehearing. 358 S.W.2d 765. In our opinion there is no evidence to support the finding of the jury.

There is little controversy as to the evidentiary facts which were established at the trial. Deceased was employed as a truck driver by Safety Convoy Company, whose place of business was in Dallas. He and his wife resided in Hillsboro. The employer was engaged in the business of delivering new automobiles from the Ford assembly plant in Dallas to various points in Texas. Its drivers operated on what was known as a "show-up-system." Postings of trips were made at intervals during the day, and the loads were chosen by the drivers present in the order of their seniority. There were occasions when the junior drivers had no loads and thus no work. A driver was free to work or not work as he saw fit even if there were loads to be taken. He could sign out at any time on the "unavailable list" and be away for as long as three days for any reason he considered proper. The drivers were on call, however, and could be called at any time. The company would "get on" a driver who signed the list to be available at a certain time and then failed to show up. Drivers were paid on a loaded mile basis with certain allowances for split loads, etc. They received no additional compensation for attending postings, waiting on the lot, repair time or return trips.

A number of drivers owned trucks which were leased to the company. There is no evidence indicating that this was required as a condition to their employment. Some drivers operated trucks owned by the company and received the same pay as an owner-operator did for his services as a driver. A driver who owned his vehicle executed a written agreement leasing the same to the company. The contract provided, among other things, that only freight solicited and controlled by the company would be transported in the leased vehicle, that the company would have full possession and control of the vehicle during the term of the lease, that the vehicle would be operated only by employees of the company, and that its operation would be under the direction and complete supervision of the company. Under the terms of the contract, the lessor was required to maintain the vehicle in first-class operating condition and to pay all operating costs, including gasoline, oil, tires and repairs. As compensation for the use of his vehicle, he received 65% of the gross freight billings which it hauled less driver's pay. The deduction for driver's pay was the same whether the vehicle was

operated by the owner or by another employee.

If a lessor did not wish to work and his vehicle was needed, the company had the right to and would put another driver on the truck. The company required that leased trucks be properly maintained and would have cancelled the lease if the owner failed to perform his obligations in this respect. Facilities for maintaining and servicing the trucks were provided by the company, which charged the owner for services performed on a leased vehicle, but the owner was free to have the work done anywhere he desired. The owners preferred to and usually did have their trucks repaired elsewhere by mechanics whom they selected. When the owners of leased trucks had uncoupled their tractor units from the company trailers and were off duty, it was customary for many of them to drive their trucks to and from home. An owner was at liberty to use his vehicle for personal errands as he saw fit while he was off duty.

Bottom was employed by the company as a driver for a number of years. Several months before his death he purchased a new Ford tractor unit and executed a written contract leasing the same to his employer. The lease agreement is on the company's usual form and contains the provisions mentioned above. The stipulated compensation for the use of the truck was paid to Bottom semi-monthly, and he received his driver's pay on two other dates each month.

He was killed when his tractor unit overturned while he was driving from Hillsboro to Dallas on Sunday morning, October 11, 1959. The last work he did for the company was to take a load to Forney, near Dallas, the previous morning. He apparently returned to Dallas and signed the "available list" at 3:45 p. m. Saturday afternoon, but later scratched his name off. He also signed the "unavailable list" and stated that he would be available at 8:00 p. m. on October 10th. At 5:20 p. m. he again signed the "unavailable list" and on this occasion indicated that he was going home and would be available for work at 4:00 p. m. on October 11th.

Bottom drove to Hillsboro Saturday night in his bobtailed truck, i. e. without the company trailer attached. Sunday morning he declined to go to church with his wife, saying that the company needed him badly and that he would try to get back to Dallas for a 1:00 p. m. posting. While in Hillsboro he had the truck greased, its brakes adjusted, and a spark plug cleaned. The total charge for this service was $5.80. He left home for Dallas at about 10:30 a. m., and the accident occurred some thirty minutes later at a point several miles north of Hillsboro.

During the period of his employment by Safety Convoy Company before he acquired his own truck, Bottom never drove an empty company truck from Dallas to Hillsboro. He did try to get loads going through Hillsboro, and occasionally stopped at home when passing through with a load or after making a delivery. On other occasions he went home by bus or rode with another driver, or his wife went to Dallas for him. After purchasing his truck, Bottom used this vehicle whenever he wanted to go home. The truck was bought in Hillsboro, and he took it there for all repairs. He had work done on it nearly every time he went home. Trucks owned by the company were always serviced in Dallas unless they broke down on the road.

■ Section 1 of Article 8309, Vernon's Ann.Tex.Civ.Stat., provides that the term "injury sustained in the course of employment" shall include "all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." The requirements of this statute are not satisfied by proof that injury occurred while the claimant was engaged in or about the furtherance of

his employer's affairs or business. He must also show that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business or profession. See Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192; Texas Indemnity Ins. Co. v. Clark, 125 Tex. 96, 81 S.W.2d 67; Aetna Life Ins. Co. v. Burnett, Tex.Com.App., 283 S.W. 783.

■ As a general rule an injury received while using the public streets and highways in going to or returning from the place of employment is not compensable because not incurred in the course of employment as required by the statute. United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210; American General Ins. Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370. The rationale of this rule is that in most instances such an injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer. See Smith v. Texas Employers' Ins. Ass'n, supra; Bozant v. Federal Underwriters Exchange, Tex.Civ.App., 159 S.W.2d 973 (wr. ref. W.M.).

■ There are exceptions to the general rule. Injuries received while going to or returning from work have been held to be compensable where the means of transportation was furnished, or the employee was reimbursed for his travel expenses, by the employer as a part of the contract of employment, and where the employee had

undertaken a special mission at the direction of the employer or performed a service in furtherance of the employee's business with the express or implied approval of the employer. We have not said or held, however, that an employee is in the course of his employment whenever he rides in a vehicle owned, or is otherwise furnished transportation, by the employer. It is well settled that the mere gratuitous furnishing of transportation by the employer as an accommodation to the employee and not as an integral part of the contract of employment does not bring the employee who is injured while traveling on the streets and highways within the protection of the Workmen's Compensation Act. See American General Ins. Co. v. Coleman, supra, and authorities there cited.

■ In 1957 the Legislature amended Article 8309 by adding Section 1b, which is quoted in the margin.[1] The new section does not provide that an employee shall be deemed or may be regarded as being in the course of his employment when any one of the specified conditions is satisfied. We also note that Section 1 was amended in 1959, but the above quoted definition of "injury sustained in the course of employment" was not changed. When the provisions of Section 1b are read in connection with those of Section 1 and our decisions construing and applying the same, we think the Legislature intended thereby to circumscribe the probative effect that might be given to the means of transportation or the purpose of the journey rather than to enlarge the definition found in Section 1.

---

[1.] "Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

The intention to authorize compensation for an injury received while the employee is permitted, solely for his own accommodation and not for any purpose connected with the employment, to ride in a vehicle owned and controlled by the employer, would have been expressed in clearer terms if that had been the legislative purpose. It is still necessary, therefore, for the claimant to show that the injury is of a kind and character that had to do with and originated in the work, business, trade or profession of his employer and was received while he was engaged in or about the furtherance of the affairs or business of the employer.

■ Bottom was employed by Safety Convoy Company as a driver, and he had also leased his truck to the company. There is no evidence indicating that his enjoyment of either relationship was in any way dependent upon the other. It was his duty as lessor to keep the leased vehicle in proper condition, but the employment contract did not contemplate or require that he subject himself to road hazards for the purpose of maintaining trucks owned or leased by the company. Taking the truck to Hillsboro or elsewhere to have it serviced was not part of his job as driver, and there is no evidence that he was on a special mission for his employer.

After signing out on Saturday evening, he was free to go wherever he desired and do whatever he pleased. While the employer had the right to control the truck, that circumstance alone does not place Bottom in the course of his employment at the time of the accident. The company might have compelled him to leave the truck in Dallas for someone else to drive, but it could not have required and did not request him to take it to Hillsboro for service and repair. Instead of exercising its full rights under the lease contract, the company relinquished actual control of the vehicle to Bottom and permitted him to use the same for his personal purposes. This was done as a favor to the truck owner and was not

an incident of his employment as driver. If we assume that the evidence will support the conclusion that he went to Hillsboro primarily to have the truck greased rather than to visit his wife, the trip was not made for any purpose related to his employment. He had driven home in his own truck at his own expense to serve his own purposes, and at the time of the accident was returning to his place of employment where he expected to resume his duties. His fatal injuries did not have to do with and originate in the business of the employer as required by Article 8309. They resulted instead from hazards which he as a member of the traveling public encountered in making the trip to see his wife and to have the truck serviced in accordance with the lease agreement. The case is governed by the general rule mentioned above, and the trial court should have sustained petitioner's motion for judgment non obstante veredicto.

The judgments of the courts below are reversed, and judgment is here rendered that respondent take nothing.