**TRADERS & GENERAL INSURANCE COMPANY, Appellant,**

v.

**Ethel Irene SELF, Appellee.**

No. 7466.

Court of Civil Appeals of Texas.

Amarillo.

May 17, 1965.

Rehearing Denied June 21, 1965.

Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellant.

Joe L. Cox, Plainview, Donald L. Worthington, Cushing, Okl., for appellee.

DENTON, Chief Justice.

This is a workmen's compensation case in which Ethel Irene Self, wife of Jack C. Self, was awarded statutory death benefits under the Workmen's Compensation Act for the death of her husband. The jury found Self suffered a fatal injury while acting in the course of his employment for Plains Food, Inc. From a judgment based on this jury finding, Traders & General Insurance Company, the employer's insurance carrier, has perfected this appeal. No brief has been filed by the appellee.

The principal question to be determined is whether or not Self was fatally injured while in the course of his employment. Most of the evidence is undisputed. Jack C. Self was a regularly employed truck driver for Plains Food, Inc., a food canning company of Plainview, Texas. Self resided in Oklahoma but worked out of his employer's establishment at Plainview. The truck driven by Self was owned by his wife, appellee here, and was leased by her to Plains Food, Inc. He was paid a regular

salary and expenses while on the road. The written lease between Mrs. Self and Plains Food, Inc. provided the truck was "for the purpose of hauling vegetables, fertilizers, any item of canned goods, bearing any labels other than those registered by Plains Food, Inc., processed by it for customers canning, and all goods, all types of new and used canning machinery, empty cans, cartons, canned goods after process as canned by us, or as canned by other packers for lessee's account, raw products, salt, glue, labels and all other items used in such business." The lease gave Plains Food "full and complete control of the above-mentioned equipment during the term of the lease." The company had no permit to haul for hire, but it needed no permit to haul its own merchandise.

The company in the business of canning food regularly delivered its merchandise to North Carolina, South Carolina, California, Kansas, Oklahoma, and other distant states from time to time. On June 5, 1962, Self's truck was loaded in Plainview with five different consignments of various canned vegetables. Self was instructed to deliver the prescribed consignments to named brokers in the following order: Greenville, S.C.; Charlotte, Winston-Salem, Greensboro, and Raleigh, N.C. When the last consignment was delivered in Raleigh, N.C., Self called Ashley Mixon, president and general manager of Plains Food in Plainview, and advised him he had completed his deliveries. Mixon then instructed Self to go to Seagrove, N.C., to pick up 166 cases of black-eyed peas and deliver them to a named warehouse in Charlotte, N.C. Self was also told to pick up 10,000 labels and 2 bundles of empty boxes at Seagrove and return them to Plainview. The invoices in evidence show these items were picked up by Self on June 15. These items in addition to 12 or 15 cases of rejected peas picked up at Greensboro made up Self's load to return to Plainview. The company had no further communication from Self as he was killed in a highway accident on June 16 six or eight miles northwest of Morganton, N.C. Sometime after leaving Charlotte and before the accident, Self entered into a lease agreement with Underwood & Weld Company, Inc., of Crossnore, N.C., to haul 17 tons of mica for that company from Newland, N.C., to Los Angeles, Calif. The record shows Self was advanced $300.00 for the trip. Self was proceeding with this load of mica when the fatal collision occurred. Mixon of Plains Food had no knowledge of Self's leasing the equipment to Underwood & Weld, and his company had never owned, purchased, or used any mica; and, in fact, he testified he did not know what it was. The record indicates Morganton is north and west of Charlotte, the last stop Self made for Plains Food. Mixon testified Self had no business for his company in either Morganton or Newland, and that Self had no authority to lease the truck to anyone nor did Self have authority to haul mica in the truck.

Section 1 of Article 8309, Vernon's Ann.Civ.St., provides that the term, "injury sustained in the course of employment", "shall include all other injuries of any kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." It is well established that not only is it required to show the injury had to do with and originated in the employer's work, trade or business; but it must be shown the injury occurred while the claimant was engaged in or about the furtherance of his employer's affairs or business. Smith v. Texas Employers' Ins. Ass'n., 129 Tex. 573, 105 S.W.2d 192; Texas General Indemnity Co. v. Bottom, Tex., 365 S.W.2d 350. In the latter case the court held the Legislature in adding Section 1b, Article 8309, which is entitled "Transportation or travel as a basis for claim for injury"

"intended thereby to circumscribe the probative effect that might be given to

the means of transportation or the purpose of the journey rather than to enlarge the definition found in Section 1."

"It is still necessary, therefore, for the claimant to show that the injury is of a kind and character that had to do with and originated in the work, business, trade or profession of his employer and was received while he was engaged in or about the furtherance of the affairs or business of the employer."

■ A determination of the principal question must necessarily depend upon the particular facts and circumstances of this case. We have concluded, after reviewing this record, that as a matter of law Self was not acting within the course and scope of his employment at the time he was fatally injured. This conclusion is not based on the fact Self was apparently not returning to Plainview, Texas, by the most direct route, but on the basis he had deviated from his employer's affairs or business. Self had a discretion to determine the routes to take on these long trips. Even though it may be said the route he was taking was not the shorter and more available route, that itself would not take Self out of the scope of his employment. Texas Employers' Ins. Ass'n. v. Monroe, (Tex.Civ.App.), 216 S.W.2d 659. However, we think it is clear Self deviated from his employment with Plains Food when he leased the trucking equipment to Underwood & Weld and proceeded with the load of mica from Newland, N.C. to Los Angeles, Calif. Photostatic copies of the lease and the two checks made payable to Self are in evidence. William Godsey, bookkeeper and dispatcher for Underwood & Weld, testified by deposition as to this transaction between his company and Self. Undoubtedly, Self had authority to purchase merchandise for his employer and return it to them, but the mica transaction was not such a "legal haul." Mixon described a "legal haul" as one in which the driver was hauling goods owned by Plains Food. Self was in violation of the Plains Food lease contract as well as his own employment agreement. The insertion of the name of "Plains Food, Inc." as lessor of the truck equipment in the lease to Underwood & Weld did not alter the true nature of the transaction. It is to be noted Plains Food's address in that lease agreement was listed as 1508 S.W. 32nd Street, Oklahoma City, Oklahoma. Appellee testified this was the address of Self's sister and not of his employer who maintained its business only in Plainview, Texas. We can only conclude Self's contract to haul the load of mica was a complete deviation from the business of his employer and was a business venture of his own. Mixon testified Self's transaction with Underwood & Weld was without his knowledge or consent and that Self had no authority to enter into such a transaction. We can only conclude Self's fatal injury did not have to do with and originate in the business of his employer as required by Article 8309; instead, these injuries were sustained after he had left his employer's business and while performing a mission clearly outside of his employer's business. This deviation had no connection with the business of Plains Food but was made for the financial benefit of Self. The fact Self had Plains Food's labels, empty boxes, and the 12–15 cases of rejected peas on his truck at the time of his injury was merely incidental to the mission he was performing for his own benefit. We are of the opinion the trial court should have granted appellant's motion for instructed verdict.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing.