### The AGRICULTURAL INSURANCE CO., Petitioner,

### v.

### Henry Harold DRYDEN, Respondent.

### No. A–10786.

Supreme Court of Texas.

Dec. 8, 1965.

Rehearing Denied Jan. 26, 1966.

Orgain, Bell & Tucker, Cleve Bachman, Beaumont, for petitioner.

Woodson E. Dryden, William E. Townsley, Beaumont, for respondent.

STEAKLEY, Justice.

Henry Harold Dryden, Respondent, was injured on his way to work when his automobile turned over after a sudden swerve to avoid hitting a dog. The question to be decided is whether he was in the course of his employment at such time and hence entitled to workmen's compensation benefits. The jury found that he was; the judgment of the trial court based thereon was affirmed by the Court of Civil Appeals, one Justice dissenting. 388 S.W.2d 455. We hold that under Section 1b of Article 8309, Vernon's Annotated Texas Civil Statutes,

Dryden was not in the course of his employment at the time of his injury.

Dryden was employed as the foreman or pusher of a carpenter crew and when directed to do so was required as one of his duties to transport in his personal automobile from work site to home to work site certain power tools owned by his employer and used by the carpenter crew. The tools weighed between 180 and 200 pounds. Dryden received an extra twenty-five cents an hour as foreman. It was necessary for Dryden to arrive at the work site fifteen or twenty minutes earlier in order to have the tools unloaded and ready for use by the carpenters at the time for them to commence their work. On the occasion in question, Dryden left his home about 5:15 a. m. for a new job site in Nederland, Texas. He was transporting the tools at the time and had left his home the required few minutes earlier. He traversed the route he would have used had he not been required to transport the tools. There is no suggestion in the record that Dryden would have sought means of getting to and from work other than driving his personal automobile had he not been assigned the duty of transporting the tools.

Section 1 of Article 8309, V.A.T.C.S., as material here, provides that the term " 'injury sustained in the course of employment' * * * shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Section 1b of Article 8309 was added by the Legislature in 1957; it provides:

"Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

We held in Texas General Indemnity Co. v. Bottom (Tex.Sup.), 365 S.W.2d 350 (1963):

"When the provisions of Section 1b are read in connection with those of Section 1 and our decisions construing and applying the same, we think the Legislature intended thereby to circumscribe the probative effect that might be given to the means of transportation or the purpose of the journey rather than to enlarge the definition found in Section 1."

In Janak v. Texas Employers' Insurance Ass'n (Tex.Sup.), 381 S.W.2d 176 (1964), we analyzed Section 1b as follows:

"Sec. 1b, Article 8309, enacted in 1957, has two parts. The first part declares injuries during travel to be in the course of employment, and therefore compensable, only when transportation is (1) furnished as a part of the contract of employment, or (2) is paid for by the employer, or (3) is under the control of the employer, or (4) when 'the employee is directed in his employment to proceed from one place to another place.' "

It necessarily follows that an injury occurring during transportation cannot be the basis of a claim that such was sustained in the course of employment, as required by Section 1 of Article 8309, unless one of the prerequisites enumerated in the first sentence of Section 1b is present. It is undisputed that transportation was not furnished Dryden as a part of his contract of employment; that the transportation was not paid for by his employer; and that the transportation was not under the control of the employer. The final preliminary condition, that the employee be directed in his employment to proceed from one place to another place, is likewise absent. All of Dryden's travel was going to and from work. His subjection to traffic hazards while so driving was not the result of, or caused by, any direction of his employer that he proceed from one place to another. There was no special mission assigned Dryden which required any travel by him apart from, or in addition to, his regular and personal transportation to and from work. Cf. Whisenant v. Fidelity Casualty Company of New York, 354 S.W.2d 683 (Tex.Civ.App. 1962, writ ref., n. r. e.).

We recognize that language in cases such as American General Insurance Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370 (1957), Knipe v. Texas Employers' Insurance Assn., 150 Tex. 313, 239 S.W.2d 1006 (1951), and Jones v. Texas Indemnity Ins. Co., 223 S.W.2d 286 (Tex.Civ.App.1949, writ ref.), may be considered generally supportive of the proposition that it cannot be said as a matter of law that Dryden was not in the course of his employment within the requirements of Section 1 of Article 8309. However, these decisions were before the enactment of Section 1b and we do not reach the problem of these cases since Section 1b precludes the qualification of Dryden's injury as one sustained in the course of his employment.

The judgments of the Court of Civil Appeals and of the trial court are reversed, and judgment is rendered for Petitioner.

POPE, Justice (concurring).

I agree with the result but for a reason somewhat different from that stated in the majority opinion. It is my opinion that Dryden was in the course of employment within the meaning of Section 1 and the first part of Section 1b, Article 8309. Under Section 1b Dryden had to prove that his injury occurred when transportation (1) was furnished as a part of the contract of employment, or (2) was paid for by his employer, or (3) was under the control of th employer, or (4) when he, Dryden, was directed in his employment to proceed from one place to another place. I would hold that Dryden brought himself within the fourth category. On the Friday before the accident, his employer directed him to take the employer's power tools from a job site to the employee's home in Jasper County and to deliver the tools on the following Monday morning from his home to a new job site in Nederland, Texas. He was directed to have the tools on hand and ready for use by the other workmen when they arrived. Ordinarily the employer provided a company truck to transport the power tools from one job site to another, but separate arrangements were made when the company truck was unavailable. Dryden's additional responsibility to his employer to deliver the tools at the job site was more important than Dryden's reporting for work himself. Without the tools, no one could work; with the tools, the other men could proceed with their work though Dryden himself did not. If Dryden had been unable to report for work, the tools nevertheless had to be delivered to the new job site. Dryden, in fact, left fifteen or twenty minutes earlier than he would have if he had not been responsible for the delivery of the tools. I would hold that Dryden was directed in his employment to proceed from one place to another to deliver the tools before the other employees arrived.

It is the concluding part of Section 1b that defeats Dryden's claim. The statute following the word "unless" states a two-

pronged test that he was unable to meet. It provides:

> " * * * Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

Dryden under that provision, as a basis for his claim, had to prove two things. He had to prove that the trip to Nederland on the morning of the accident would have been made even had there been no personal or private affairs of his own to be furthered by the trip. He met that test. He also had to prove that the trip would not have been made had there been no affairs or business of the employer to be furthered by the trip. This test is a difficult one for the employee. Dryden did not prove that he would not have made the trip but for the necessity of delivering the tools for the employer.

I concur in the result.

## ON MOTION FOR REHEARING

SMITH, Justice (dissenting).

I respectfully dissent. The holding that under Section 1b of Article 8309, Vernon's Annotated Texas Civil Statutes, the respondent, Dryden, was not in the course of his employment at the time of his injury, fails to recognize the full import of the contract of employment between the employer and the employee, Dryden. Dryden's injury originated in the work of his employer. He was employed by the J & F Construction Company, a partnership. The partners were Jones and Fontenot. The firm was engaged in the business of constructing houses. The houses to be constructed and under construction were located in several towns and cities in Southeast Texas, near Beaumont and Nederland, Texas.

Dryden, when first employed, was just a member of a crew. Later he was elevated to the position of foreman or "tool pusher." Both Dryden and Fontenot testified to facts showing a special contract of employment. The contract to transport the Company's power tools was entered into on Friday afternoon before the accident occurred the following Monday morning. Dryden testified that on this particular Friday he had been working in the Pinewood addition on the Sour Lake highway; that Fontenot had a new job to begin in the town of Nederland, Jefferson County, the following Monday morning; that Mr. Fontenot came to the Pinewood job site that Friday afternoon and delivered the pay checks; and that Fontenot instructed Dryden to load the power tools in his automobile, transport them to his home near Evadale in Jasper County, and deliver the tools to a job site near Nederland, Texas, where the crew would be waiting to begin the construction of a new house with the power tools as well as their own hand tools. Dryden went on to testify that on occasions when Fontenot would enter into such agreements he, Fontenot, would help load the tools in the automobile. Fontenot testified that Dryden was originally employed as a carpenter, and later Dryden was promoted to foreman; that it was the general custom in the carpenter trade that each carpenter furnish a full set of hand tools "if he wants to work"; that he, Fontenot, furnished the power tools. Fontenot testified *that the Company usually furnished its own truck to transport the power tools from one job to another, and that he performed the job of actually driving the truck in transporting the power tools for the Company.* When the Company truck

was not available, he would arrange with Dryden to transport the tools. Fontenot testified that on this particular Friday, his partner, Jones, had possession of the Company's tool truck (usually driven by Fontenot) and had gone to Houston to "pick up" a contract on a building in Beaumont; that on that same Friday he, Fontenot, employed Dryden to pick up the power tools, transport them in his automobile to his home in Jasper County and to have them ready for use by the crew in Nederland the following Monday morning. Dryden and Fontenot both testified that the power tools were never left on a job unattended. Fontenot testified that on that particular Friday, he assigned "him [Dryden] his work." Part of that work was to transport the power tools to the job to be started at Nederland. These facts are sufficient to support a finding that the injury is of a kind and character that had to do with and originated in the work, business, trade or profession of his employer and was received while he was engaged in or about the furtherance of the affairs or business of the employer. See Texas General Indemnity Co. v. Bottom, 365 S.W.2d 350 (Tex.Sup.1963).

The Bottom case construes Section 1b of Article 8309, Vernon's Annotated Civil Statutes, and cites with approval the case of United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210 (1940). The Flanagan case supports the Bottom case, but there is language in the Flanagan case which strongly indicates a different result would have been reached had the record shown facts similar to those facts presented in the present case. In the Flanagan case the essential facts were few. Flanagan sustained personal injuries on the streets of Beaumont while returning to his home after work hours when the bicycle upon which he was riding was struck by an automobile. Flanagan was employed by a drug company to deliver parcels in the City of Beaumont. Flanagan furnished his own bicycle as a means of transporting the parcels. However, Flanagan was not delivering parcels at the time of the accident.

The Court pointed out the fact that he sometimes delivered parcels on his way home, "but had none for delivery on that night." The Court also pointed out that Flanagan "[a]fter he left the drug store at the close of his day's work at ten o'clock p. m. on the night he was injured *he was free to go where he pleased and his employer had no control over his movements*. On that night he was going home by the most direct route and was within two blocks of his home when the automobile struck him." This case was held to fall within the general rule which disallows compensation for injuries to employees while going to or returning from the place of employment. Both the Flanagan case and the Bottom case recognize that there are cases which fall within exceptions to this general rule. In the Bottom case, after giving a few examples of cases where injuries received while going to or returning from work have been held to be compensable, this Court placed Bottom's case factually within the general rule and held that " * * * [i]t is well settled that the mere gratuitous furnishing of transportation by the employer as an accommodation to the employee and not as an integral part of the contract of employment does not bring the employee who is injured while traveling on the streets and highways within the protection of the Workmen's Compensation Act."

Under the record, Dryden was bound contractually to transport the tools to the Nederland job. Fontenot and the insurer contend that Dryden was merely acting as a "favor" to the employer in transporting the tools, but the jury found that Dryden was injured in the course of his employment. Dryden was transporting the tools in furtherance of the affairs and business of his employer. He was not on a private mission as were Flanagan and Bottom. Under the agreement Fontenot was, in law, controlling the transportation of the power tools at all times. Regardless of who owned the automobile, the legal effect of the contract was that the employer furnished the transportation used by Dryden in the per-

formance of a special service to the employer. The means of transportation was selected by the employer and accepted by Dryden. The contract of employment began the moment Dryden started loading the tools. The contract of employment had not ended when the accident occurred on Monday morning. The facts of this case meet the prerequisites enumerated in Section 1 of Article 8309, supra. Section 1b should be construed in the light of the facts surrounding the employment contract. It should be remembered that contracts between employer and employee are usually oral. New agreements between employer and employee are made from time to time as circumstances arise. We have such a situation here where Fontenot realized that he must provide a means to get the tools to Nederland. He realized that it was his responsibility to furnish the transportation. In order to fulfill his contract to build a house and incidentally earn a profit, Fontenot turned to Dryden for transportation. The arrangement for the use of Dryden's automobile was equivalent to the employer furnishing transportation. Dryden accepted the employment and while carrying out his agreement was injured. Dryden was directed by his employer to proceed from Pinewood addition to Evadale and from Evadale to Nederland. The transportation of the tools was under the control of the employer. Dryden, so far as the transportation of the tools was concerned, was under the absolute control and dominion of his employer.

This Court, in the case of Janak v. Texas Employers' Insurance Ass'n, 381 S.W.2d 176 (Tex.Sup.1964), held that travel during a deviation from a regular route was in furtherance of the employer's business. In Janak, the "tool pusher" knew that the crew "must procure ice if they were to have any for their water." In our case, Dryden knew that he had agreed to deliver tools to a job site in Nederland. He knew that he had to travel from his home in Jasper County, Texas, through the town of Vidor in Orange County, thence through

Beaumont to Nederland. Dryden and the employer knew that the members of the crew must have the proper tools to properly and adequately perform their duties.

In the case of Jecker v. Western Alliance Ins. Co., 369 S.W.2d 776 (Tex.Sup.1963), this Court allowed Jecker's heirs to recover under the Workmen's Compensation Act. The Jecker case is analogous. Jecker was a sales and service manager for his employer. Impliedly, at least, Jecker had been directed by his employer to service an electric stove in a nearby town. Jecker's heirs were allowed to recover because their case fell within an exception to the general rule.

I would affirm the judgments of the trial court and the Court of Civil Appeals.