# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00022-CV

**Kevin Newsom, Individually and as Guardian and Next Friend of L.W.N., C.G.N., and C.J.N., Minors, Appellant**

**v.**

**Ballinger Independent School District, Appellee**

### FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT NO. 13,810, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this appeal of a claim for workers' compensation death benefits arising from a fatal automobile accident involving his spouse, Kevin Newsom, individually and on behalf of his children, appeals the district court's summary judgment in favor of appellee Ballinger Independent School District. For the reasons that follow, we affirm the judgment.

## BACKGROUND

In the fall of 2003, Cecyle Newsom was employed by the District as a teacher and a junior high school girls' basketball coach. She was the head coach of the eighth grade girls' basketball team. On Saturday, November 22, 2003, Mrs. Newsom was fatally injured in an automobile accident as she was driving to the school complex to conduct a practice.

Her husband, Kevin Newsom ("Newsom"), filed a claim for workers' compensation benefits on behalf of himself and the Newsoms' three sons. The District denied the claim on the basis that Mrs. Newsom's death did not occur in the "course and scope of her employment."

The Texas Department of Insurance, Division of Workers' Compensation (the "Division"), held a contested case hearing in June 2004 to determine whether Mrs. Newsom's death resulted from a compensable injury. The hearings officer found that Mrs. Newsom was acting in the course and scope of her employment at the time of her death and concluded that her family was entitled to death benefits. The District appealed the hearings officer's decision to the Division's appeals panel. The appeals panel affirmed the hearing officer's decision.

In September 2004, the District sought judicial review in district court. In its original petition, the District maintained that Mrs. Newsom was driving to work when the accident took place. The District moved for summary judgment on the ground that labor code section 401.011(12)(A) defined the phrase "course and scope of employment" to exclude travel to and from a person's place of employment. Accordingly, the District argued that Mrs. Newsom's death was noncompensable and the Division's award of death benefits should be reversed.

The district court granted the District's motion and rendered summary judgment reversing the Division's benefits award. On Newsom's appeal, the judgment was set aside as void, the appeal was dismissed, and the case remanded to the district court.[1] The parties again filed cross-motions for summary judgment on the issue of whether Mrs. Newsom was in the course and scope

---

[1] *See Newsom v. Ballinger Indep. Sch. Dist.*, 213 S.W.3d 375 (Tex. App.—Austin 2006, no pet.).

of her employment at the time the accident occurred. The district court again granted summary judgment in favor of the District, and this appeal followed.

## DISCUSSION

The only issue on appeal is whether the District established as a matter of law that Mrs. Newsom's death did not occur in the "course and scope of her employment" because she was merely traveling to her place of employment, and therefore, the injury was noncompensable. Because Mrs. Newsom was driving to a Saturday practice and such practices are encouraged by her employer, Newsom contends that she was acting on a "special mission" for her employer, that she was therefore acting in the course and scope of her employment, and the injury was therefore compensable.

The parties do not dispute that an injury is compensable if it occurs in the "course and scope of employment." Section 401.011(12) of the Texas Labor Code defines that term:

> (12) "Course and scope of employment" means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations. The term does not include:
>
> (A) *transportation to and from the place of employment unless*:
>
> (i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;
>
> (ii) the means of the transportation are under the control of the employer; or

3

(iii)    *the employee is directed in the employee's employment to proceed from one place to another place.*

Tex. Labor Code Ann. § 401.011(12) (West 2006) (emphasis added).

Generally, an employee is not acting in the course and scope of employment while traveling to and from work. *See, e.g.*, *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963); *Longoria v. Texaco, Inc.*, 649 S.W.332, 335 (Tex. App.—Corpus Christi 1983, no writ); *London v. Texas Power & Light Co.*, 620 S.W.2d 718, 719-20 (Tex. Civ. App.—Dallas 1981, no writ); *American Nat'l Ins. Co. v. O'Neal*, 107 S.W.2d 927, 928 (Tex. Civ. App.—San Antonio 1937, no writ). This rule is based on the premise that an injury occurring while traveling to and from work is caused by risks and hazards incident to driving on public streets, which has nothing to do with the risks and hazards emanating from a person's employment, *Smith v. Texas Employers' Ins. Assoc.*, 105 S.W.2d 192, 193 (Tex. 1937), and the employer has not increased the employee's risk beyond the risk to the general public.

An exception to the general rule exists where an employee has undertaken a "special mission" at the employer's direction or is otherwise performing a service in furtherance of the employer's business with the express or implied approval of the employer so that "the employee is directed in the employee's employment." Tex. Labor Code Ann. § 401.011(12)(A)(iii); *see also Chevron, U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 356 (Tex. App.—El Paso 1993, no writ); *Gebert v. Clifton*, 553 S.W.2d 230, 231-32 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ dism'd w.o.j.). Injuries that occur while driving between job sites are covered based on a direction by the employer to proceed from one place to another. To be on a special mission, an employee must be acting under

4

the control or in furtherance of the employer. *Chevron, U.S.A., Inc.*, 847 S.W.2d at 356. An employee is not engaged in a special mission when the employer neither requires a particular means of travel, nor directs the employee to take a particular route.

A special mission is a specific errand that an employee performs for his employer, either as part of his duties or at his employer's request. It involves work or a work-related activity apart from the employee's regular job duties. *See Chevron, U.S.A., Inc.*, 847 S.W.2d at 356 (employee traveling at direction of employer en route to mandatory seminar was on a special mission); *Best Steel Bldgs., Inc. v. Hardin*, 553 S.W.2d 122, 129 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) (employee instructed to travel from job site to pick up supplies was on a special mission); *see also Direkly v. ARA Devcon, Inc.*, 866 S.W.2d 652, 654 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (employee who stopped at friend's house to retrieve briefcase so she could work at home was not on a special mission).

The undisputed summary-judgment proof shows that Mrs. Newsom was killed in a single-vehicle automobile accident on her way to a practice of her girls' basketball team on a Saturday. She had departed her residence and was on her way to the District's facilities where both junior high and high school classes were conducted. The facility is a single complex utilized jointly by the junior high and high school. It was also undisputed that her purpose in going to the District's facility that day was to conduct basketball practice with her eighth grade girls' basketball team.

The District contends that Mrs. Newsom was traveling to her regular place of employment and was therefore outside of the definition of the term "course and scope of employment." *See* Tex. Labor Code Ann. § 401.011(12). Because transportation to and from a place

5

of employment is not included within the definition of "course and scope of employment," an injury is not compensable unless it falls within one of the three exceptions to noncompensability. The parties dispute only whether Mrs. Newsom was on a "special mission" as to fall within the third exception to the noncompensability provision, *i.e.*, that she was directed by her employer. Newsom urges and averred in his affidavit that the Saturday practice was "a special practice, in furtherance of her duties as the coach" and that "she was encouraged to have such special practices by the school."

In support of its motion for summary judgment, the District produced the affidavits of Mickey Owens, the director of athletics for the District; Tri Danley, the high school varsity girls' basketball coach; Freda Perez, the coach of the high school girls' junior varsity basketball team; and Nancy Minzenmayer, the seventh grade girls' basketball coach. The District's summary judgment evidence showed that the eighth grade girls' team generally practiced from 3:00 to 3:45 p.m. on school days. Owens averred that University Interscholastic League ("UIL") rules would not allow teams to practice after school and on Saturdays except during specific times of the year. When UIL rules did allow additional practice after school and on Saturdays, the District allowed the coach to conduct those practices, as long as the practices were in compliance with UIL regulations and did not exceed limitations concerning the amount of time that could be spent in practice. Owens also averred that extra practice time was allowed and encouraged, and that it was not unusual for the girls' basketball teams to practice after school or on Saturdays: "Although Saturday was not a regular practice day, Saturday practice was not an unusual occurrence."

6

The proof also showed that Mrs. Newsom had total control over the scheduling of practices for her team. Neither Owens nor Tri Danley, the high school girls' basketball coach and Mrs. Newsom's immediate supervisor, set the schedule for the teams to practice. Danley averred that Saturday practices were not allowed by the UIL until after the last Monday in October. In her affidavit, she stated:

> Cecyle Newsom and Nancy Minzenmayer set their own schedules for their teams to practice. Saturday practices for the girls' basketball teams were not required by me or the athletic department, but they were allowed. The only limitation or restriction was that the coach comply with the UIL rules on the amount of time that could be spent in practice, especially limitations concerning practice after school and practices on Saturday. The only other limitation was having available gym space.

Danley averred that on November 22 she was deer hunting and had not scheduled or contemplated practices by any of the teams or a scrimmage between any of the teams: "[T]here was no planned scrimmage between the high school girls' varsity teams and the 8th grade girls' 'A' team on Saturday, November 22, 2003." Nor did she instruct Mrs. Newsom to conduct a practice on that date. She left the practice schedule to Mrs. Newsom's discretion. She averred:

> Basketball practice at that time of year on Saturday was not unusual. This was a routine practice, and it was a normal or routine part of Cecyle Newsom's job as head coach of the 8th grade girls' basketball team.

There is no testimony that anyone in the District directed Mrs. Newsom to conduct a practice on that day. The decision as to the scheduling of practices was left to her discretion and, on that day, it is uncontroverted that Mrs. Newsom alone decided that she would schedule a practice.

In response to the District's motion and in support of his own motion for summary judgment, Newsom averred that the practice was not a "regularly scheduled practice," but was instead a "special practice." But he does not dispute that practices were conducted regularly after school and on Saturdays. Nor does he dispute that Mrs. Newsom scheduled her practices.

Relying on *Evans v. Illinois Employers Ins.*, 790 S.W.2d 302 (Tex. 1990), Newsom urges that because the practice was not a regularly scheduled practice, it was transformed into a "special mission." In *Evans*, two employees working on their company's contract with the Army Corps of Engineers to relocate a county road and railroad tracks had been instructed by their supervisor on the Friday before the accident to attend a safety meeting at 7:30 a.m. on the following Monday morning, at which time their pay began. As the two men were driving directly to the meeting on Monday morning, they collided with a train. Because all employees were required to attend the regularly scheduled safety meetings as a part of their employment, attendance was "an integral part of the job, and not a special mission, travel to the safety meeting was simply travel to work." *Id*. at 304. The employees asserted that because the meeting started at an earlier time than their usual work began and was at a different location than their work that they were on a special mission. The court rejected this argument:

> Had [the employees] been injured while en route from the safety meeting to the primary work site[], these injuries would have been covered by the Act. However, since neither of them had begun work, their injuries fall squarely within the 'coming and going' rule and they are thereby precluded from recovering workers' compensation benefits. If other factors are not found to be special, then the employee must have been actually working as he traveled down the road in order for an injury to be compensable.

8

*Id*. at 305. Because the employer neither supplied the transportation, compensated the employees for transportation time to the safety meetings, specified the route to be taken, nor was aware of the route normally taken, there was nothing that would bring the employees within the coverage of the Act. By merely being on their way to work at the time of the accident, the court concluded that the employees were outside the scope of employment. *Id*.

In this case, Mrs. Newsom was driving to the school complex for practice; she was not traveling on a "special mission" for the school district, nor was she traveling at anyone's direction or control. We conclude that the accident occurred while Mrs. Newsom was en route to work and that the accident did not occur in the course and scope of her employment.

## CONCLUSION

We affirm the judgment of the district court granting summary judgment in favor of the District.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: July 17, 2007