# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0120

═══════════

STEVEN PAINTER; TONYA WRIGHT, INDIVIDUALLY AND AS REPRESENTATIVE OF
THE ESTATE OF EARL A. WRIGHT, III, DECEASED; VIRGINIA WEAVER,
INDIVIDUALLY AND AS NEXT FRIEND OF A.A.C., A MINOR; AND
TABITHA R. ROSELLO, INDIVIDUALLY AND AS REPRESENTATIVE OF
THE ESTATE OF ALBERT CARILLO, DECEASED, PETITIONERS,

v.

AMERIMEX DRILLING I, LTD., RESPONDENT

═══════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

═══════════════════════════════════

JUSTICE GREEN, joined by JUSTICE BROWN, dissenting.

In May 2016, we denied the petition for review in another vicarious liability case that arose

out of the same facts and accident as this one and involved the same issues regarding control over

the driller's after-hours transportation of crew members and the driller's employment status at the

time of the accident.[1] *See Painter v. Sandridge Energy, Inc.*, 511 S.W.3d 713 (Tex. App.—El Paso

2015, pet. denied). Because we denied the petition, the court of appeals' decision in that case stands.

There, the court held that Sandridge Energy, Inc., the oil and gas leaseholder who hired Amerimex

---

[1] After denying the petition, we abated the case on suggestion of bankruptcy. We lifted the abatement in
January 2017, and after no motion for rehearing was filed, we sent notice of our denial of the petition for review to the
court of appeals on July 24, 2017.

Drilling I, Ltd., was entitled to summary judgment on the plaintiffs' vicarious liability claims because Sandridge had no contractual right to control the manner in which crew members were transported from the work site, and J.C. Burchett, the driller, maintained actual control over his transportation of crew members. *Id.* at 724. Therefore, Burchett was not Sandridge's employee, "at least with respect to transporting the crew"; rather, as to the transportation work, "Burchett has all the makings of an independent contractor." *Id.* For the same reasons that Burchett was held not to be Sandridge's employee for purposes of transporting the crew in that case, I would hold that Burchett was not Amerimex's employee for purposes of transporting the crew in this case. Because the Court concludes that Amerimex is not entitled to summary judgment on the plaintiffs' vicarious liability claims, I dissent.

## I. Background

Sandridge hired Amerimex to do the drilling on its lease. Their contract obligated Sandridge to pay Amerimex a daily rate during drilling and to pay three additional "bonus" amounts for specific payments to Amerimex employees: (1) a "bottom hole bonus" for each worker who worked during a specific period with no lost time for safety, (2) a "subsistance [sic] bonus" of $50/day to each worker, and (3) a "driver bonus" of $50/day for each driller "to drive crew out to well location." Amerimex would invoice Sandridge for those additional amounts, and the employees would receive the bonus payments along with their usual pay. Although the contract referred to Amerimex as an "independent contractor," the court of appeals in the *Sandridge* case noted that it also provided "several areas where Sandridge exerted specific control over the details of the work."

2

*Id.* at 721. That court concluded that "the actual terms of the contract reflects the opposite" of an independent contractor arrangement, at least as to certain aspects of the work. *Id.* at 722.

The record contains no indication of any contract or agreement regarding transportation between Amerimex and Burchett. However, it is undisputed that the contract between Amerimex and Sandridge—the only contract mentioning transportation of crew members—was silent as to the manner in which drillers would provide transportation to crew members. It is also undisputed that neither Sandridge nor Amerimex actually controlled the manner in which Burchett drove crew members to or from the job site.

The accident happened after the crew's shift ended, when Burchett and the crew members were off the clock. Until their next shift began the next day, Amerimex had no control over them, and they were free to do as they wished. Amerimex had no transportation requirements for drillers or crew members and did not require that they stay at the bunkhouse that Amerimex made available. Rather, they were free to sleep wherever they wished, and they were free to travel to and from the job site however they wished.

## II. Employment Status

The "supreme test" for determining whether vicarious liability applies is "whether the person being held responsible can be said to have had a right to control the activities of the wrongdoer." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541–42 (Tex. 2002). "[I]n the employment context, it is the right of control that commonly justifies imposing liability on the employer for the actions of the employee." *Id.* at 542. "Because an independent contractor has sole control over the means and methods of the work to be accomplished, however, the individual or entity that hires the independent

3

contractor is generally not vicariously liable for the tort or negligence of that person." *Id.* (citing *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) (citations omitted)). I agree with the Court that our initial inquiry must focus on the employment relationship between Burchett and Amerimex and whether, at the time of the negligent conduct, Amerimex had the right to control the progress, details, and methods of Burchett's work. *See* ___ S.W.3d at ___. The Court actually skips this critical inquiry, however, instead asserting that Burchett's status as Amerimex's employee at the time of the accident is undisputed and conclusive because an employer–employee relationship exists as to Burchett's drilling work. But Amerimex has disputed Burchett's employment status as to the transportation of crew members since the litigation began,[2] and the plaintiffs' vicarious liability claims cannot be resolved without considering the employment relationship governing the conduct at issue in this case.

The Court focuses on the *right to control*, as we should. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 585–90 (Tex. 1964).

> We measure the right to control by considering: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies,

---

[2] The Court claims that it is undisputed and admitted that Burchett was Amerimex's employee at the time of the accident, and that Amerimex "essentially concedes the existence of the right to control that is necessary to give rise to the [employer–employee] relationship." ___ S.W.3d at ___, ___. While it is true that nobody disputes Burchett's employment status while he was doing drilling work during his shift, Amerimex has argued since the inception of the litigation that as soon as Burchett's shift ended, he was no longer subject to Amerimex's control. In fact, Amerimex asserted in its first original answer: "Defendant is not liable to Plaintiffs because Amerimex cannot be liable in the capacity sued. No one was acting in furtherance of Amerimex business nor were the parties under Amerimex's control at the time of the accident. Further, the only potentially liable party, if any, is J.C. Burchett." In its motion for summary judgment, Amerimex pointed out that under the Texas Pattern Jury Charge, the first question the jury would be asked is whether, on the occasion in question, Burchett was acting as Amerimex's employee. Amerimex then stated: "The jury will have no choice but to answer 'no' because there is no evidence of control." Amerimex may not have used the words "independent contractor" in making this argument, but it clearly argued that no employer–employee relationship could exist at the time of the accident because Amerimex lacked a contractual right to control the transportation of crew members and Burchett alone controlled his transportation work.

4

and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.

*Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). The right to control a worker's conduct can be established one of two ways—it is created by a written contract or, in the absence of a contractual right of control, it can be implied from the exercise of actual control over the manner in which work was performed. *See, e.g.*, *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (recognizing that when a written contract creates a right to control, the plaintiff need not prove actual exercise of control); *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 226 (Tex. 1963) ("In such cases [in which there is no contractual provision for right of control,] right of control is necessarily determined as an inference from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, the right to substitute another operator of the machine, etc."); *Halliburton v. Tex. Indem. Ins. Co.*, 213 S.W.2d 677, 679 (Tex. 1948) (explaining that when supervisory authority over a specific activity under an oral contract was disputed, the acts of control actually exercised were pertinent to determining what the contract really contemplated); *S. Underwriters v. Samanie*, 155 S.W.2d 359, 362 (Tex. 1941) (instructing that when an employment contract is oral and sheds little light on the right of control, we must consider "the evidence with reference to the control that was actually exercised"). Here, the record does not support either a contractual right of control or the actual exercise of control over Burchett's work transporting crew members, as is clear from the Court's opinion. The Court bases its conclusion on the insupportable inference that Amerimex's

5

right to control Burchett's drilling activities while at the job site and on the clock extends to Burchett's driving activities in his own vehicle and on his own time, referencing concerns about crew members being left stranded. But neither our law nor the evidence supports this conclusion.

We have been clear that to establish an employer–employee relationship based on the implied right of control, "[t]he employer must control not merely the end sought to be accomplished, but also the means and details of its accomplishment." *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990). We have even given specific examples of what that control looks like:

> Examples of the type of control normally exercised by an employer include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result.

*Id.* at 278–79. Simply telling a driver when and where to pick up loads, but otherwise giving the driver broad discretion to perform his work, is not sufficient to establish an employer–employee relationship. *Limestone Prods. Distribution, Inc.*, 71 S.W.3d at 312–13 (holding that a driver was an independent contractor when he was free to drive any route he wished, did not work regular hours, supplied his own truck, and paid for his truck's gasoline, repairs, and insurance). Likewise, simply paying one crew member a transportation allowance, knowing that all crew members must drive a long distance after a long shift, does not create a right to control the after-hours transportation activities. *Pilgrim v. Fortune Drilling Co.*, 653 F.2d 982, 987–88 (5th Cir. 1981). The record contains no evidence that any contract created a right of control, nor is there any

6

evidence that Amerimex actually controlled the means and details of Burchett's transportation work.

Thus, the court of appeals' conclusion in the *Sandridge* case applies equally to Amerimex:

> The contract here only provided for a bonus. It did not provide that [Amerimex] had the right to control the manner of transport, the route taken, or other details attendant to the task of driving. . . . [Plaintiffs] presented no evidence that [Amerimex] actually dictated control over the transportation of the workers, such as controlling the type of vehicle, the route taken, the driver's qualifications, when the workers would be transported, the vehicle speed, or any other factor which might relate to the occurrence of the accident. . . . At most, [Amerimex] had a say in the starting point and the ending point of the drive, but nothing in between.

*Sandridge*, 511 S.W.3d at 723 (substituting "Amerimex" for "Sandridge").

The Court rejects the notion that control should be evaluated on a task-by-task basis, ___ S.W.3d at ___, implying that employment for one purpose is employment for every purpose. By holding that a court need not even consider the question of control after the worker's shift had ended and he was off the clock, the Court essentially decides that it is impossible for a worker to be an employee while on the clock and an independent contractor for separate work done on his own time.[3] However, "[t]he common-law principles that define when there will be vicarious liability are designed to assign liability for injury to third parties to the party who was directing the details of the negligent actor's conduct *when that negligence occurred*." *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 146 (Tex. 2003) (emphasis added); *see Am. Nat'l Ins. Co. v. Denke*, 95 S.W.2d 370,

---

[3] The Court purports to accept the possibility that a worker could be both an employee and an independent contractor. *See* ___ S.W.3d at ___ n.13. At the same time, however, the Court concludes that an analysis of an employer's right to control an off-duty worker's conduct is inappropriate when an employer–employee relationship exists as to the worker's conduct while on duty. *See id.* at ___ (explaining that an employer's right to control the injury-producing activity is not part of the vicarious liability analysis because the existence of an employer–employee relationship establishes the requisite control). How could a court ever determine that dual employment relationships exist if the existence of an employer–employee relationship thrusts the inquiry directly to the issue of course-and-scope, disregarding the disputed issue of control and whether the off-duty work was performed as an independent contractor?

373 (Tex. 1936) (explaining that a master is liable for the negligent acts of its servant under the doctrine of respondeat superior "only where the relationship of master and servant exists at the time and in respect to the very thing causing the injury and from which it arises"). Since at least the 1930s, we have accepted that an employer–employee relationship does not preclude the existence of a second, coexisting employment relationship. *See, e.g.*, *Riggs v. Haden Co.*, 94 S.W.2d 152, 154 (Tex. 1936) (analyzing whether an independent contractor's employee had become so completely subjected to the general contractor's control as to be an employee of the general contractor). In such cases, we have considered the evidence as to who had the right to control the injury-producing conduct to determine whether vicarious liability is appropriate. *See, e.g.*, *St. Joseph Hosp.*, 94 S.W.3d at 542 (considering who had the right to control the worker's activities at the time of the negligent conduct, despite evidence of a general employment relationship); *Producers Chem. Co.*, 366 S.W.2d at 225–26 (same). Just as an employee of one employer can be a borrowed employee of another employer as to certain work—a proposition we have never doubted—an employee can be an independent contractor as to certain work when the employee himself has the right of control over that work. *See Producers Chem. Co.*, 336 S.W.2d at 225 ("Solution of the question rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence."). In fact, we acknowledged as much in *Eagle*

8

*Trucking Co. v. Texas Bitulithic Co.*, 612 S.W.2d 503 (Tex. 1981), in which we held that a company's employee can also be an independent contractor when he provides separate services that ultimately benefit his employer but he retains the right to control that separate work. *Id.* at 508 (concluding that an assistant manager of a company that owned two hot mix plants was an independent contractor for sand-hauling services when he owned the truck, paid all repairs and insurance on it, and used the truck from time to time to haul for other businesses in the area).[4] The "supreme test," as it always has been, is the right to control the work at issue. *Golden Spread Council, Inc. # 562 of the Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996) (recognizing that "the right to control remains the 'supreme test' for whether the master-servant relationship exists"). In this case, the work at issue is the transportation of crew members, and there is no question that Burchett controlled the details and methods of that work.

The Court has created a new standard under which the existence of an employer–employee relationship for *any work* negates the first step of our traditional vicarious liability analysis (asking

---

[4] The Court dismisses *Eagle Trucking* as inapplicable because Billy Wayne Peden, the assistant manager/employee in that case, was not hired as an independent contractor by Texas Bitulithic, his employer, but rather by Texas Bitulithic's own independent contractor, G & G Construction. ___ S.W.3d at ___. That distinction misses the point—Peden's employment relationship with Texas Bitulithic did not satisfy the first step of the vicarious liability analysis and shift the inquiry to the second, course-and-scope step, as the Court does now; instead, the Court considered who had the right to control the sand-hauling work, concluding that Texas Bitulithic was not vicariously liable because Peden was an independent contractor as to the sand-hauling work. *Eagle Trucking*, 612 S.W.2d at 508 ("Texas Bitulithic and G & G Construction had no more than the power to direct the place sand was to be loaded and the place it was to be unloaded. There was no other control over Peden, his truck, or his driver."). The relationships in this case are no more attenuated. Sandridge hired Amerimex under a contract that purported to create an independent contractor relationship but, in actuality, allowed Sandridge to retain the right to control some aspects of Amerimex's work. *See Sandridge*, 511 S.W.3d at 723. The contract provided that Sandridge would fund bonus payments that would be passed through to Amerimex's employees, including the driller's driving bonus. Amerimex hired Burchett as a driller and paid him the driller's driving bonus. Because there is no clear contractual right to control Burchett's transportation services, we must consider who actually controlled that work, just as the Court did in *Eagle Trucking*. There is no question that Burchett controlled the transportation work.

9

whether, at the time of the negligent conduct, the employer had the right to control the progress, details, and methods of the injury-producing activity) and skips straight to the second step (asking whether, at the time of the negligent conduct, the employee was in the course and scope of employment). However, the fact that a worker is an employee while on the clock doing drilling work does not necessarily mean that the worker is also an employee while doing transportation work off the clock. The employment relationship governing the transportation work must be considered independently, evaluating whether a contractual right to control that work exists or whether a right of control exists by implication, based on the exercise of actual control. The result in this case should be no different from that in the *Sandridge* case, because the record is undisputed that neither Sandridge nor Amerimex controlled Burchett's transportation work. *See Sandridge*, 511 S.W.3d at 723. I agree with the *Sandridge* court, and its conclusion applies equally to Amerimex:

> [W]e do not find evidence in the summary judgment record to support the claim that Burchett was [Amerimex's] employee (or principal), at least with respect to transporting the crew. [Amerimex] may have benefitted from the end result of Burchett ferrying the crew back and forth from the worksite, but it did not control any details of the transportation, such as when he would leave and return, what kind of vehicle he would use, how he would drive that vehicle, nor dictate the route to be taken. At least with respect to the transport of the crew, Burchett has all the markings of an independent contractor, and none of being [Amerimex's] employee or agent.

*Id.* at 724 (substituting "Amerimex" for "Sandridge"). I would hold that, as to the transportation work in which Burchett drove employees to and from the job site on his own time, Burchett was an independent contractor and Amerimex was entitled to summary judgment on the plaintiffs' vicariously liability claims.

10

### III. Course and Scope

Generally, "an employer owes no duty to protect the public from the wrongful acts of its off-duty employees that are committed off the work site." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 405 (Tex. 2009). As the Court recognizes, an employer is not vicariously liable for the negligent conduct of its employee unless the conduct was within the course and scope of employment. ___ S.W.3d at ___; *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). Under the coming-and-going rule, an employee generally is not in the course and scope of employment while traveling to and from work. *Tex. Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963); *see Pilgrim*, 653 F.2d at 987 ("The courts in Texas have clearly adhered to the principle that getting to and from the place of work is ordinarily a personal problem for the employee and not part of his services to his employer."). "The rationale of this rule is that in most instances such an injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer." *Bottom*, 365 S.W.2d at 353; *Smith v. Tex. Emp'rs' Ins. Assoc.*, 105 S.W.2d 192, 194 (Tex. 1937) ("Even though the contract of employment contemplates that the employee, while engaged generally in the performance of his duties, may be subjected to the perils and hazards of the streets and highways, nevertheless in order that an injury resulting from the risks of the streets may be compensable, the employee, at the time of the injury, must be actually engaged in the performance of some particular duty of his employment, or must be upon some substantial mission of his employer in the course of his employment, which subjects him to such perils."). As the Fifth Circuit Court of Appeals understands, "[a] different rule should not prevail where the

11

employer provides a travel allowance to an employee," where the distance between home and the work site is long, where the employer benefits from having its employees travel long distances to the remote work site, or where one member of the crew is selected to receive the travel allowance. *Pilgrim*, 653 F.2d at 988. I agree. The scenario in this case is no different from if an accident occurred while Burchett was traveling in his own vehicle, on his own time, from a restaurant where he ate lunch using the subsistence bonus funded by Sandridge and paid to him by Amerimex. Likewise, it is no different from if Burchett had been given a $50 gas card rather than a bonus funded by Sandridge. Even if Burchett were Amerimex's employee with respect to transporting crew members before and after shifts, a conclusion I disagree with for the reasons expressed above, I would hold that the coming-and-going rule applies, precluding Amerimex's vicarious liability.

## IV. Conclusion

Consistent with the result of *Sandridge*, which held that the leaseholder was entitled to summary judgment on the plaintiffs' vicarious liability claims because there was no evidence that anyone other than Burchett controlled his work transporting crew members, 511 S.W.3d at 724, I would hold that Amerimex is entitled to summary judgment on the plaintiffs' vicarious liability claims for the same reason. I would affirm the court of appeals' judgment.

_____
Paul W. Green
Justice

OPINION DELIVERED: April 13, 2018

12